**STATE BOARD OF REGENTS, State of Iowa, Appellant,**

v.

**UNITED PACKING HOUSE FOOD AND ALLIED WORKERS, LOCAL NO. 1258 affiliated with the United Packing House Workers of America, AFL–CIO, John Walton, Individually, and as President of Said Association, Richard Kammeyer, Individually, and as Vice-President of Said Association, Kenneth Stock, Individually and as Recording Secretary of Said Association, and Raphe Bramblett, Individually and as Financial Secretary of Said Association, and all Officers, Members, Agents and Representatives of Said United Packing House Food and Allied Workers Local No. 1258 and all Persons Individually and as a Class, who Aid, Abet or Assist the Foregoing Named Defendants, or any of Them, Appellee.**

No. 53565.

Supreme Court of Iowa.

Feb. 10, 1970.

Leo M. Baker, Reed, Merner, Sindlinger, Baker & Sabbath, Cedar Falls, for appellant.

C. A. Frerichs, Fulton, Frerichs, Nutting & Kennedy, Waterloo, for appellee.

STUART, Justice.

Sometime prior to February 20, 1968, the non-academic personnel who operate the physical plant of the University of Northern Iowa (UNI) organized themselves into a union and received a charter as Local No. 1258 United Packing House Food and Allied Workers of America AFL–CIO (UPWA). On February 20, 1968 the union and its members struck against plaintiff, who has the administrative authority over U.N.I., and established picket lines. Plaintiff brought this action which ultimately resulted in a permanent injunction:

" * * * enjoining and restraining the defendants and each of them individually and collectively from engaging in a strike or concerted work stoppage against the University of Northern Iowa and from picketing on or near the campus or in the vicinity of the campus * * * in furtherance of any strike or conserted work stoppage or for the purpose of coercing plaintiff to bargain collectively with the defendant union Local No. 1258 * * * except that nothing contained herein shall be deemed to prevent informational picketing which in no way interferes with or impedes the operation of the University of Northern Iowa."

Plaintiff appealed from that part of the Ruling and Order and Decree which holds the Board of Regents has the power to enter into collective bargaining and collective bargaining agreements.

Defendants appealed from that portion of the injunctive order which prohibits

them from picketing the campus for the purpose of coercing plaintiff to bargain collectively with defendant union.

■ Because of the narrow questions presented by this appeal, it might be helpful to point out that the following propositions are accepted as the law of the case. (1) Public employees have the right to organize and join labor organizations. (2) Public employees do not have the right to strike. (3) Defendants have the right to picket for informational purposes if the picketing does not interfere with or impede the operation of the university.

I. Does the Board of Regents, as the administrative agency of the state charged with the duty of operating the state institutions of higher learning, have the power and authority to bargain collectively with defendant union?

■ The employer-employee relationship in public employment "is governed by statutory law and administrative regulation, it is not fixed, either in whole or in part, by contract, as in the field of private industry". City of Los Angeles v. Los Angeles Bldg. & C. Tr. Council, 94 Cal.App.2d 36, 210 P.2d 305, 310. Defendants concede there is no specific legislation giving the board such authority. They rely on the rule of statutory construction that whenever a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied. Koelling v. Board of Trustees of Mary F. Skiff Memorial Hospital (1966), 259 Iowa 1185, 1194, 146 N.W.2d 284, 290, and citations; Wichita Public Schools Emp. U. Local No. 513 v. Smith (1964), 194 Kan. 2, 397 P.2d 357, 359. They claim the authority is necessarily implied in section 262.9(2) (4) (7) (11), Code of Iowa which gives the Regents the general power to hire employees, fix their salaries and wages, direct the expenditure of money and to perform all other acts necessary and proper for the execution of the powers and duties conferred by law upon it.

The answer to the question depends upon the definition of the term "collective bargaining". Neither party nor the trial court defines the term. There is a vast difference between implying authority in the Regents to meet with selected representatives of a group of employees to discuss wages, working conditions and grievances on behalf of those who have agreed to such representation and implying authority in the Regents to recognize the union as the exclusive employee representative for collective bargaining on behalf of all employees.

It is not clear for which concept of collective bargaining the parties are contending. Plaintiff seems to take the position that all sort of representative bargaining and discussion is improper without specific authority. In oral argument counsel for defendant stated that if one person spoke for himself and another this was "collective bargaining". However, their brief contains extensive quotes from Richard F. Dole, Jr., State and Local Public Employee Collective Bargaining in the Absence of Explicit Legislative Authorization, 54 Iowa L.Rev. 539, 542–543, which is focused "on the legality of negotiating and contracting with an exclusive employee representative, and that is the sense in which collective bargaining is hereafter used. As a practical matter, execution of a collective bargaining contract almost never occurs without some form of exclusive recognition."

■ The power to hire employees, fix their salaries and wages, direct expenditures of money and to perform all other acts necessary and proper for the execution of the powers and duties conferred upon the Regents carries with it the power and authority to confer and consult with representatives of the employees in order to make its judgment as to wages and working conditions. We hold the Regents have authority to engage in collective bargaining in this context.

"A public employer's general power to carry out its assigned functions is suffi-

ciently inclusive to permit consultation with all persons affected by those functions. * * * This consultation serves the public interest by permitting informed governmental action without abridging governmental freedom of action." Dole, ibid., 54 Iowa L.Rev. at 542.

"In order to react to the validity of the assertion that such a general concept of collective bargaining does constitute a serious invasion of school board authority, it seems necessary to delineate fully what is legally meant by collective bargaining. The concept of what constitutes good faith collective bargaining has been worked out to a large extent by the federal courts and the National Labor Relations Board in interpreting Section 8(d) of the National Labor Relations Act, which by its specific language imposes a duty on employers and unions to 'meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment' and goes on to state 'such obligation does not compel either party to agree to a proposal or require the making of a concession'.

" * * * It is submitted that the guide lines laid down by the National Labor Relations Board and the Federal courts establish a valid concept of good faith collective bargaining. *Indeed those who indulge in voluntary bargaining may very well want to follow much the same pattern.*" Seitz, Legal Aspects of Public School Teacher Negotiating And Participating In Concerted Activities. 49 Marquette Law Review 487, 489. (Emphasis supplied.)

"An appreciation of the principles set forth helps to give realistic meaning to the term good faith collective bargaining and has convinced certain courts and legislative bodies that permitting public school employees to bargain collectively does not invade school board authority. Essentially this is because even though collective bargaining does place certain responsibilities upon the employer, there is nothing in the principle stated which forces capitulation

to demands. It does not, therefore, appear accurate to assert that school boards are forced to delegate away authority. * * *

"It is, of course, apparent that when the school board undertakes collective bargaining, as it has been defined, it undertakes burdens which it does not need to assume if it does not bargain collectively. The assumption, however, of these burdens does not mean that the board has delegated away its authority." Seitz, ibid., 49 Marquette Law Review at 493.

The Board of Regents has the power and authority to meet with representatives of an employee's union to discuss wages, working conditions and grievances if it so desires. It can do so without becoming obligated to meet with the representatives of any other group of employees. The agreed terms could be adopted by the Regents in a proper legislative manner. Such action does not involve an improper delegation of legislative powers to private persons as there is no compulsion to sign an agreement and the final decision remains in the Board of Regents.

On the other hand, if the legislature desires to give public employees the advantages of collective bargaining in the full sense as it is used in private industry, it should do so by specific legislation to that effect. We cannot imply authority under these general powers to agree to exclusive representation, depriving other employees of the right to be represented by a group of their choosing or an individual the right to represent himself. Dole, in 54 Iowa L.Rev. 539, presents many sound reasons why collective bargaining, with limitations, should be authorized for public employees. But the limitations, provisos and exceptions which the author suggests should be imposed by the court in implying the power to bargain collectively are persuasive arguments for holding it is a matter for the legislature, not the courts. The power to fix the terms and conditions of public employment is a legislative function

which, with proper guidelines from the legislature, can be delegated to its administrative agencies.

"An endeavor by the courts to define some limited field for the contract system would be an attempt at judicial legislation." Nutter v. City of Santa Monica (1946) 74 Cal.App.2d 292, 168 P.2d 741, 747.

"The existence of a statute in the field of public employee bargaining is of major significance. As has been indicated, courts may sanction voluntary bargaining in the absence of statute but this will not always insure the desired result. For instance, a statute can spell out election procedure to be used in the determination of a majority representative in an appropriate unit. It can make clear that bargaining is to be on an exclusive basis with the organization that represents the majority of the employees in an appropriate unit. It can express other intents. If there is no statute, whatever attempts are made at bargaining may break down in arguments over procedure and over such questions as exclusive representation." Seitz, ibid., 49 Marquette Law Review 498–499.

The following cases from other jurisdictions support our position.

In City of Springfield v. Clouse (1947) 356 Mo. 1239, 206 S.W.2d 539, 543, Mr. Wood testified for the union: "Now, collective bargaining means a good many things. There are many types of collective bargaining. When you sit down at a table, representative of the employees of the city sits down at a table and discusses the matter concerning employees relations between an employee and the city, that is collective bargaining."

The Missouri Supreme Court said: "This is confusing collective bargaining with the rights of petition, peaceable assembly and free speech. Certainly public employees have these rights for which Mr. Wood was contending; and can properly exercise them individually, collectively or through chosen representatives, subject, of course, to reasonable legislative regulation as to time, place and manner in the interest of efficient public service for the general welfare of all the people."

The court refused to apply the industrial concept of collective bargaining to public employees.

In N. J. Turnpike Auth. v. Amer. Fed. of State, etc., Emp. (1964), 83 N.J.Super. 389, 200 A.2d 134, 138–139, the New Jersey Supreme Court said:

"Nothing in the Constitution or statutes of this State renders unlawful the organization of public employees for their mutual interest. Further, they may have representatives of their own choosing present their 'grievances and proposals' to the proper authorities; however, the public interest is always paramount.

"The right to organize does not carry with it the right to collective bargaining. The term 'collective bargaining' is conspicuously absent from the rights conferred upon public employees by virtue of the N. J.Const., Art. I, par. 19. The Attorney General of New Jersey has aptly set forth the reasons therefor, in a memorandum opinion dated October 20, 1954, in response to an inquiry from the South Jersey Port Commission:

" 'The concept of collective bargaining, as generally understood and applied in the field of private industry, implies bargaining sanctions and weapons not admissible to public employees, such as the right to strike and other incidents of the private employment relationship not appropriate in the public employment field. It also implies two bargaining entities of co-equal status, each with unlimited power to enter into binding commitments. This does not apply in the case of the state in relation to its employes.'

"Although the Turnpike is not obliged to engage in collective bargaining, it is under an affirmative duty to meet with its employees or their chosen representatives and consider in good faith the 'grievances and

proposals'. However, any decision reached must be the result of the independent judgment of Turnpike, taking into consideration, *inter alia*, the 'grievances and proposals' of its employees.

"It should be emphasized that any one or more representatives may speak only for those employees who chose them. The Turnpike has no right to recognize a representative of only a segment of its employees as agent for all of the employees of the Turnpike."

The Minnesota Supreme Court also considered this issue:

"The next point raised is whether the school board has implied power to conduct an election and bargain with elected representatives of teacher organizations. The school board possesses only such powers as are granted by statute. Board of Education v. Sand, 227 Minn. 202, 34 N.W.2d 689. There is no authority, either express or implied, by which the school board can hold an election for the purpose of designating an exclusive representative of the teachers. This subject is dealt with in an extensive annotation contained in 31 A.L.R.2d 1142. The decisions generally hold that the manner in which public authorities must determine the wages, hours, and working conditions of public employees is governed entirely by the Constitution, statutes, municipal charters, civil service rules and regulations, and resolutions setting out the authority of the public employer. Public employees do not have collective bargaining rights in the same sense that private or industrial employees enjoy them. There must be some statutory provision authorizing collective bargaining. The reason is that the public employer cannot abdicate or bargain away continuing legislative discretion and is not authorized to enter into collective bargaining agreements without specific authority. The fact that statutory provisions grant the right of collective bargaining to employees in private industry does not confer such right on public employers and employees. Richfield Federation of Teachers v. Richfield Education Assn., *supra* [263 Minn. 21, 115 N. W.2d 682]; Annotation 31 A.L.R.2d 1170.

"There is nothing to prevent the heads of governmental agencies from meeting with, or discussing wages, hours, and conditions of employment with, groups or individuals representing groups of the employee class. * * *

"It would appear that even without express statutory authority, there is nothing to prevent collective bargaining when it is entered into voluntarily and no prohibitory state statute exists. Even though courts may sanction voluntary bargaining in the absence of statute, satisfactory results can hardly be expected. A statute is needed to spell out procedures to be used in the determination of majority representatives in an appropriate unit. But this is a legislative concern. * * * In the meantime, there is nothing to prevent the school board from meeting with representatives of both teacher groups. Certainly, in the past the school board has not dealt individually with its more than 3,000 teachers. Until the legislature provides a better method, the parties must resort to the former methods employed to solve their differences." Minneapolis Fed. of Teachers Local 59 v. Obermeyer (1969) 275 Minn. 347, 147 N. W.2d 358, 366–367.

Norwalk Teachers' Ass'n v. Board of Education (1951) 138 Conn. 269, 83 A.2d 482, 486, 31 A.L.R.2d 1133, which is cited as approving of collective bargaining, does not use the term in the full industrial sense.

"There is no objection to the organization of the plaintiff as a labor union, but if its organization is for the purpose of 'demanding' recognition and collective bargaining the demands must be kept within legal bounds. What we have said does not mean that the plaintiff has the right to organize for all of the purposes for which employees in private enterprise may unite, as those are defined in § 7391 of the General Statutes. *Nor does it mean that*, having organized, it is necessarily protected

against unfair labor practices as specified in § 7392 or *that it shall be the exclusive bargaining agent for all employees of the unit*, as provided in § 7393. *It means nothing more than that the plaintiff may organize and bargain collectively for the pay and working conditions which it may be in the power of the board of education to grant.*

"Questions (c) and (d) in effect ask whether collective bargaining between the plaintiff and the defendant is permissible. The statutes and private acts give broad powers to the defendant with reference to educational matters and school management in Norwalk. If it chooses to negotiate with the plaintiff with regard to the employment, salaries, grievance procedure and working conditions of its members, there is no statute, public or private, which forbids such negotiations. It is a matter of common knowledge that this is the method pursued in most school systems large enough to support a teachers' association in some form. It would seem to make no difference theoretically whether the negotiations are with a committee of the whole association or with individuals or small related groups, *so long as any agreement made with the committee is confined to members of the association.* If the strike threat is absent and the defendant prefers to handle the matter through negotiation with the plaintiff, no reason exists why it should not do so. The claim of the defendant that this would be an illegal delegation of authority is without merit. *The authority is and remains in the board."* (Emphasis supplied.)

See also: Nutter v. City of Santa Monica (1946) 74 Cal.App.2d 292, 168 P.2d 741, 747–748; Fellows v. LaTronica (1962) 151 Colo. 300, 377 P.2d 547, 550–551; Delaware River and Bay Auth. v. International Organization etc. (1965) 45 N.J. 138, 211 A.2d 789, 792–793; Philadelphia Teacher's Association v. LaBrum (1964) 415 Pa. 212, 203 A.2d 34, 36; City of Pawtucket v. Pawtucket Teachers' Alliance (1958), 87 R.I. 364, 141 A.2d 624, 629; Opinion of the Attorney General, State of Iowa, August 16, 1961; Anno. 31 A.L.R.2d 1142.

The following cases hold the public employer has no authority to engage in collective bargaining or enter into collective bargaining contracts without specific legislation to that effect. They contain no reference to the power to meet and consult with representatives of groups of employees. International Union of Operating Engineers Local 321 v. Water Works Board (1964, Ala.), 163 So.2d 619, 620–621; Miami Water Works Local No. 654 v. City of Miami (1946) 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967; Dade County v. Amalgamated Association of S.E.R. & M.C. Emp. (1963, Fla.App.) 157 So.2d 176, 183; International Longshoremen's Ass'n v. Georgia Ports Authority (1962) 217 Ga. 712, 124 S.E.2d 733, 737; Wichita Public School Employees Union, Local No. 513 v. Smith (1964), 194 Kan. 2, 397 P.2d 357, 359–360; Mugford v. Mayor and City Council (1945) 185 Md. 266, 44 A.2d 745, 162 A.L.R. 1101; Weakley County Mun. Elec. Sys. v. Vick (1957) 43 Tenn.App. 524, 309 S.W.2d 792, 804; City of Alcoa v. International Brotherhood of Elec. Workers (1957), 203 Tenn. 12, 308 S.W.2d 476.

Most of the cases cited by defendants for the proposition that power to engage in collective bargaining in the industrial sense may be implied involve employees working for the government in its corporate or proprietary capacity. Local 266, etc. v. Salt River Project Agr. Imp. & P. District (1954) 78 Ariz. 30, 275 P.2d 393; International Brotherhood of Electrical Workers v. Town of Farmington (1965) 75 N.M. 393, 405 P.2d 233; Civil Service Forum v. New York City Transit Authority (1957), 4 A.D.2d 117, 163 N.Y.S.2d 476; Christie v. Port of Olympia (1947), 27 Wash.2d 534, 549–550, 179 P.2d 294.

We are not, by pointing out this distinction in the instant case indicating we would follow this line of authority if a proprietary function were involved. There is a strong line of authority to the contra-

ry. International Operating Engineers Local No. 321 v. Water Works Board, supra; Nutter v. City of Santa Monica, supra; Miami Water Works Local No. 654 v. City of Miami, supra; Dade County v. Amalgamated Association of S.E.R. & M.C. Emp., supra; International Longshoremen's Ass'n v. Georgia Ports Authority, supra; City of Springfield v. Clouse, supra; Weakley Co. Mun. Elec. Sys. v. Vick, supra; City of Alcoa v. Int. Brotherhood of Electrical Workers, supra.

Chicago Div. of Ill. Ed. Ass'n v. Board of Education (1966), 76 Ill.App.2d 456, 222 N.E.2d 243, is the only case cited which implies authority to enter into a collective bargaining agreement with a sole collective bargaining agency selected by employees working in a governmental capacity. We prefer the logic and reasoning behind those cases which hold this is a matter for specific legislation.

II. There is also confusion about the meaning of collective bargaining agreements. In the industrial sense they are not contracts of employment but trade agreements entered into between the employer and representatives of the employees resulting in an accord as to wages, working conditions, grievances and such other matters as may be agreed upon. J. I. Case Co. v. Nat. Lab. Rel. Board (1944), 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762, 766. Almost without exception they include a provision making the union the exclusive bargaining agent. Dole, ibid. at 543. Under our holding in Division I, it is obvious that the Regents would have no authority to enter into a collective bargaining agreement in the sense recognized in private industry.

■ However, we can see no reason why the Regents, if they so desire, could not enter into one written contract with the union binding all members of the union agreeing to such representation as long as the terms of the contract are within the statutory authority of the board and contains no terms of employment which could not be included in a standardized contract for individual employees.

III. Defendants cross-appealed from that portion of the trial court's order which prohibits them from picketing even when not in furtherance of a strike "for the purpose of coercing plaintiff to bargain collectively with defendant union * * * except that nothing contained herein shall be deemed to prevent informational picketing which in no way interferes with or impedes the operation of the University of Northern Iowa".

We agree with the trial court.

■ "It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a state if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance." Hughes v. Superior Court of California (1950), 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985, 992.

■ "Peaceful picketing may be enjoined if its purpose is to violate a significant and reasonable state policy established either by legislative or judicial decision." Ind. Dairy Workers, etc. v. Milk Drivers, etc. Local No. 680 (1959), 30 N.J. 173, 184, 152 A.2d 331, 337.

■ "* * * it is more than clear that a State may, without abridging the right of free speech, restrain picketing where such curtailment is necessary to protect the public interest and property rights and where the picketing is for a purpose unlawful under State laws or policies, whether such policies have been expressed by judicial organ or the legislature of the State." Board of Education of Community Unit Sch. Dist. v. Redding, 32 Ill.2d 567, 207 N.E.2d 427, 431.

■ We have heretofore held that the Board of Regents has no authority to enter into collective bargaining or collective bar-

gaining agreements in the industrial context. We have also held the Board of Regents may voluntarily meet and consult with representatives of groups of employees to discuss wages, working conditions and grievances. The decision whether to do so or not remains that of the Board of Regents. Therefore, any picketing to coerce the Board of Regents to bargain collectively against its better judgment would either be illegal, against public policy or both.

In support of this position see: International Brotherhood of Teamsters, Local 695, AFL v. Vogt (1957), 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347; Hughes v. Superior Court of State of California, supra; International Brotherhood of Teamsters, Local No. 309 v. Hanke (1950), 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Giboney v. Empire Storage and Ice Co. (1948), 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Bakery and Pastry Drivers and Helpers Local 802 etc. v. Wohl (1942), 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178; City of Los Angeles v. Los Angeles Bldg. & C. Tr. Council, 94 Cal.App.2d 36, 210 P.2d 305, 311; Board of Education of Community Unit Sch. Dist. v. Redding (1965) 32 Ill.2d 567, 207 N.E.2d 427, 431–432; Board of Education, Borough of Union Beach v. New Jersey Education Association (1967), 96 N.J. Super. 371, 233 A.2d 84, 92–93; Delaware River & Bay Auth. v. International Org., etc. (1965) 45 N.J. 138, 211 A.2d 789; Ind. Dairy Workers, etc. v. Milk Drivers, etc., Local No. 680, supra. But see: City of Rockford v. Local No. 413, Int. Ass'n of Fire (1968), 98 Ill.App.2d 36, 240 N.E.2d 705, 708.

In arriving at the final determination of this case we have considered that the trial court treated collective bargaining as meeting with and discussing wages, working conditions and grievances rather than the full industrial sense. We have therefore modified the trial court's order and decree only insofar as we have attempted to spell out in more detail the limitations on the power of the Board of Regents in this particular area. For the reasons set out we modify and affirm the decision of the trial court.

Modified and affirmed.

MOORE, C. J., and LARSON, SNELL, MASON and LeGRAND, JJ., concur.

BECKER and RAWLINGS, JJ., concur specially.

REES, J., takes no part.

BECKER, Justice (concurring specially).

I concur in the announced result; i. e., the trial court's order is affirmed. I cannot concur in certain limitations which are imposed by way of dicta in connection with acknowledgment of the Board of Regents' power to bargain collectively.

I. One must first determine just what the majority holds. As I read the opinion the court holds the Board has power to:

1. Meet with, confer and consult with representatives of labor employees in order to make its judgment as to wages, grievances and working conditions. (Opinion, pp. 112 and 113).

2. They may implement their decision by: (a) appropriate legislation (Opinion page 113), (b) by a proper contract with the union binding all members of the union. (Opinion, page 117).

3. The Board is not compelled to exercise the power noted but may do so if it pleases.

This is all the case calls for us to decide and I agree with these decisions. But the court goes on to mandate certain affirmative actions and prohibit other actions, to wit:

1. The Board cannot agree to exclusive representation by a designated union. (Opinion, page 113).

2. It may deal with as many groups (presumably within the same classification) as decide to associate themselves together for the purpose of collective bargaining, but may also refuse to deal with any one or more groups if it so desires. Thus making the group of its choice the exclusive bargaining agent in fact if not in theory. (Opinion, page 113).

These two pronouncements are not within the issues presented to us and they should not be decided at this time. They have not been adequately briefed and argued. Nor do we have a reasonably complete record on the subject. If the questions are to be decided without adequate argument or briefing, then I must disagree with the majority conclusion on the basis of what has been submitted.

II. Let us first look at the facts and issues presented. Nothing in the record indicates the defendants contend they must be recognized as the *exclusive* bargaining agent. The trial court's decision is silent on the subject. Plaintiff-appellant's brief is also silent except for the following sentence: "* * * The question of exclusive recognition is one which requires a great deal of consideration. * * *."

Defendants' answering brief is silent on the subject of exclusive bargaining. In fact, defendants limit their contention in this area: "It is defendant's argument that beside the power to contract for employment presently being exercised by plaintiff for personal service, the plaintiff had the power to execute a master contract with the members of the defendant union for personal services * * *." Nothing in this brief reveals a contention that defendants must be recognized as the exclusive bargaining agency.

Plaintiff's reply brief answers both defendants' brief and certain of the Amicus Curiae briefs noted infra. Again defendants do not argue the exclusive bargaining matter. Its only reference thereto follows: "* * * If the trial court's decision is affirmed, the State of Iowa will have per-missive collective bargaining for public employers with no rules to control this bargaining. Without specific legislation, public employers will not know if representation must be exclusive, if arbitration is required, if strikes are legal or if matters under the merit system are proper subjects of bargaining. These are but a few of the questions which would arise. * * *."

Three Amicus Curiae briefs were filed. A brief by the city of Des Moines repeatedly notes that the right to bargain exclusively with defendants is not involved here: "Thus, too, the district court's refusal to find an absolute prohibition against any and all collective bargaining did not connote or necessarily endorse the matters of arbitration, exclusive recognition or any of the other 'complex' problems which might or might not arise in a particular bargaining situation. It simply left it open to the parties to proceed if *both* were willing, with such ultimate and collateral questions as they might encounter being susceptible to judicial resolution if desired or out of hand rejection if the employer should be unwilling to agree.

"* * * (It being emphasized again that no demand for 'exclusive' recognition was or has been suggested or placed in issue here.)"

The Iowa State Education Association states early in its brief: "At the outset it should be made clear that the matter at issue does not involve the legality of public employee strikes, a request for recognition of an exclusive bargaining agent, or the right of public employees to force collective bargaining upon a public employer who is unwilling to do so. * * *."

The Iowa Nurses Association also received permission to, and did, file an Amicus Curiae brief. At page 16 it states: "* * * The case of Philadelphia Teachers Association vs. LaBrum [415 Pa. 212], 203 A.2d 34 (Sup.Ct., Pa., 1964) cited by appellant concerns itself only with an interpretation of state law concerning the appointment of an arbitrator and exclusive recog-

nition, and again, has no relevance to the case at bar."

One would suppose that if the right to bargain exclusively were an issue in this appeal the parties would have argued the matter and the friends of the court would not have been at such great pains to note the matter was not an issue here.

III. Why then does the majority opinion deal with the issue? In part at least the answer lies in the law review article by Richard F. Dole, Jr., State and Local Public Employee Collective Bargaining in the Absence of Explicit Legislation, 51 Iowa Law Rev. 539. This article elected to comment on this case in depth and in detail while it was in the process of appeal. From the standpoint of this case it is not, I submit, the usual learned article in a professional journal, commonly used as secondary authority in opinions of appellate courts. It is, rather, an unofficial Amicus Curiae brief which deals primarily with an issue not now before the court.

As noted by the majority, defendant relies heavily on Professor Dole's article. The article is not used in connection with the issue of exclusive bargaining. This is natural because the issue isn't argued at all by anyone.

IV. There cannot be much doubt that the issues of exclusive bargaining and mandatory recognition of multiple bargaining agencies are not in this case. But if the court elects to ignore this fact and proceeds with an advisory opinion we all have to vote on the advice.

I cannot agree that public collective bargaining must be interpreted to prohibit exclusive bargaining with one recognized agency. Within limits, this court can tell an administrative agency what it can and cannot do under the law. But we cannot, and normally do not, attempt to tell the agency *how* to do what it can do.

This is what we are doing here. We say they may bargain collectively but they may not bargain exclusively. In the same breath we say the agency has the right to refrain from bargaining with any groups of employees it chooses. The positions are inconsistent. If the agency can recognize one group and refuse to bargain with all others isn't it bargaining exclusively? We are not here talking about closed shops, or union shops, or any of the other restrictive types of contracts in the broad spectrum of the labor law. We are speaking only of the agency's right to limit its discussion to one representative.

As a practical matter we are placing public agencies in an impossible position. While Professor Dole's article should be treated as an additional brief, the majority opinion makes it germane. The article poses the underlying difficulty of non-exclusive bargaining rather well: "Power to confer exclusive recognition is a corollary of power to execute a master contract. Where there are actual or potential rival employee representatives, it is difficult for a public employer to obtain a master contract without resort to exclusive recognition. Competitive pressures make each representative reluctant to reach agreement until every representativve is willing to accept the same terms. Exclusive recognition also simplifies the administration of a master contract. In the absence of exclusive recognition, employees claiming infringement of their rights under a master contract can shop around for a representative who is willing to press their claims. This, of course, introduces competitive considerations into contract administration and can require a public employer to deal with an inordinately large number of employee representatives. Exclusive recognition both relaxes competitive pressure on the recognized representative and permits a public employer to channel all employee claims through a single representative. * * *

"Some courts seem to have been as perturbed by exclusive recognition as by the negotiation of collective bargaining contracts. There are several older decisions indicating that it is an abuse of discretion

for a public employer to grant exclusive recognition to an employee representative if all employees concerned are not already supporters of the exclusive representative. However, the more recent cases conclude that exclusive representation of both members and nonmembers is permissible where there is satisfactory evidence of at least majority employee support for the exclusive representative, the exclusive representative is required to represent all employees regardless of union membership, and employees are given assurances that exclusive representation will not preclude individual presentation of complaints to the public employer." 54 Iowa Law Rev. 546, 547, 548. With the above limitations, exclusive bargaining should not pose the problems envisioned by the majority. But again, at this time, we should not attempt to explore the subject.

V. One of the phrases most often used in the majority opinion is "collective bargaining in the industrial sense". There is an implication that if the employee's bargaining unit is recognized as an exclusive agent there is collective bargaining "in an industrial sense". This is not true. The legal right to strike has been eliminated. The *legal necessity* to bargain has been eliminated. The *right* to deal with non-union individuals is preserved. The open shop—as it is commonly known—is preserved. So that even if the public agency finds it more efficient—or even necessary —to bargain exclusively, there are many factors which remove the process from bargaining "in the industrial sense". If this phrase is a shorthanded way of making a point it is an oversimplification that commands a poor result.

This statement is already too long, yet it is clearly incomplete. The difficulty is that the opinion and concurrence are written on a point not argued. The opinion, as written, is likely to cause more public employee industrial strife, rather than less. It can only make the public administrators' personnel problems more complicated rather than less complicated. I would affirm

the trial court without the qualifying obiter dicta which imposes unnecessary burdens on the public agencies.

RAWLINGS, J., joins in this special concurrence.