222 N.W.2d 403 (1974)
SERVICE EMPLOYEES INTERNATIONAL, LOCAL NO. 55 et al., Appellants,
v.
CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT, Appellee.
No. 56450.
Supreme Court of Iowa.
October 16, 1974.
*404 R. Fred Dumbaugh, Cedar Rapids, for appellants.
John R. Carpenter and M. G. Hardesty, Jr., Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.
Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and McCORMICK, JJ.
MASON, Justice.
Plaintiff, Service Employees International Local No. 55, an unincorporated labor organization affiliated with Service Employees International appeals from a ruling of the Linn District Court dismissing its petition for declaratory judgment relief under rule 262, Rules of Civil Procedure.
May 19, 1972, plaintiff, the alleged authorized and acting representative of the custodial and maintenance employees of the Cedar Rapids Community School District, filed a petition in equity seeking judicial construction of certain clauses of what is labeled and referred to by various witnesses in the trial transcript as a "working agreement" adopted by defendant Cedar Rapids Community School District for the fiscal year 1971-1972.
The Union alleged the "working agreement" had been entered into in early 1971 after negotiations between the Union and the School District and was designed to regulate working conditions and compensation for custodial and maintenance employees represented by the Union and employed by the School District during the period. Plaintiff further alleged that approximately two months later the School District advised the Union there would be certain modifications in the work schedules of certain employees covered under the agreement from the provisions provided in the agreement. Basically, the Union alleged the School District established a rule not provided in the agreement.
The Union specifically sought in proceeding under rule 262, R.C.P., to have the court declare that its members had the right to be automatically paid time and a half for work performed on Saturdays in making "building checks" and "servicing plant facilities" and further that the School District does not have the sole and exclusive right to adjust the work schedule on a weekly basis as was done in this case without first obtaining the approval of the employee organization. The Union had previously raised these two questions through the grievance procedure provided in the "working agreement."
The School District in answer alleged, inter alia, as an affirmative defense, the School District could not enter into collective bargaining agreements in the industrial context with labor unions and therefore any cause of action based on a collective bargaining agreement was not enforceable and any contract provisions of an illegal agreement were unenforceable and void.
After trial the court found the "working agreement" was not a valid and enforceable contract between the School District and plaintiff Union or any of its members or any custodial or maintenance employees of the District; that there was no contract to *405 interpret and thus the court was without jurisdiction or statutory authorization to proceed by way of declaratory judgment.
The trial court expressed the opinion that "jurisdiction of declaratory judgment proceedings cannot be conferred by consent of the parties, or by stipulation, and a court may raise the question of its jurisdiction over the subject matter sua sponte" and dismissed the Union's petition.
Rule 262, Rules of Civil Procedure, provides in pertinent part:
"Any person interested in a contract, oral or written * * * may have determined any question of the construction or validity thereof or arising thereunder, and obtain a declaration of rights, status or legal relations thereunder."
In this equitable proceeding our review is de novo. Rule 334, R.C.P.
This "working agreement" is described as the written policy adopted by the Cedar Rapids Community School District relative to the relationship between the district and its custodial and maintenance employees. We are told the purpose of these policies is to provide guidelines for the administration in conducting the affairs of the School District.
I. This appeal presents for review the issue whether the written policy adopted by the School Board relative to working conditions and compensation for custodial and maintenance employees of the School District is a contract as contemplated in rule 262 and therefore a proper subject for judicial construction.
The matter concerning custodial and maintenance working conditions and pay schedule of employees of the Cedar Rapids Community School District is determined after negotiations are had between a committee of the School District consisting of at least two board members, directors of buildings and grounds of the schools in the District and representatives of the custodial organization. Representatives of the Union and the School District discuss proposals concerning wages, hours, working conditions, vacations, sick leave, bereavement leave, family illness leave, emergency leave and other matters of this nature. Recommendations are made by both sides.
After the discussions are completed recommendations are presented to the board of directors of the District for final approval and ratification at a school board meeting. Items negotiated are listed with a notation of the decision of the negotiating team for the School District as to approval or disapproval. At the board meeting considering the recommendations the representatives of the custodial organization read into the record those portions of the recommendations which are not agreed to by the Union.
The board of directors of the District makes the final judgment in regular session on matters to be included in its written policy. It is not bound to include either the tentative recommendations made by the committee of the School District or those made by representatives of the custodial organization. The board also has the sole discretion as to whether a particular policy or written guideline is to be followed in a given situation by the administration.
When the board finally agrees on the various proposals and recommendations it adopts what is labeled in this matter as a "working agreement" which is promulgated and passed on motion and becomes a part of the official written minutes of the board and a part of the official board policy.
Members of the custodial and maintenance crews are hired individually at the commencement of their employment but not on an annual basis and are subject to discharge. They do not sign individual contracts and the board does not sign a union contract.
The foregoing is an outline of the basic procedure utilized in arriving at the "working agreement" between the Union and the School District in regard to the working conditions and pay schedule for custodial and maintenance employees of the District not only for 1971-1972 but also for prior *406 years at least since 1954-1955 when similar matters were being considered.
At the close of the evidence the trial court in a colloquy with counsel regarding written briefs expressed the view the issue before the court was a "pretty narrow" one. The court indicated doubt as to whether the "working agreement" constituted a contract subject to interpretation by the court in a declaratory judgment action.
Only the procedural question is presented here; the merits of the controversy are not involved.
II. The Union makes two arguments in support of its contention the "working agreement" was a contract: (1) signature of the parties is not necessary to establish a binding contract; and (2) defendant is estopped from contending the agreement is not a contract. The School District makes two arguments that no contract exists: (1) the School District has no authority to enter into binding contracts such as involved here; and (2) because of lack of mutuality the agreement is unenforceable because it is not a contract.
The first question presented is whether the School District could enter into a contract with the Union. Both parties cite State Board of Regents v. United Packing House, etc., 175 N.W.2d 110 (Iowa 1970) as authority for their position. There the nonacademic personnel who operated the physical plant at the University of Northern Iowa organized a union and later struck against the University. The Board obtained a permanent injunction barring the union from striking or engaging in a concerted work stoppage. The Board appealed from that section of the trial court's order and decree holding it had the power to enter into collective bargaining agreements.
Before it reached the merits this court stated the proposition public employees have the right to organize and join labor unions was accepted as the law of the case. It should be noted the parties here do not contest the right of the maintenance personnel to organize and join a labor union.
The issue confronted by the court in State Board of Regents was whether the Board of Regents had the power and authority to bargain collectively with the union. This court held the Board did not have the power to enter into collective bargaining or collective bargaining agreements in the industrial context.
The court also stated:
"The power to hire employees, fix their salaries and wages, direct expenditures of money and to perform all other acts necessary and proper for the execution of the powers and duties conferred upon the Regents carries with it the power and authority to confer and consult with representatives of the employees in order to make its judgment as to wages and working conditions. We hold the Regents have authority to engage in collective bargaining in this context." Id. 175 N.W.2d at 112.
In the trial court's judgment the parties had not collectively bargained in the industrial context. The trial court stated:
"In failing to sign the working agreement, the parties recognized that the law of Iowa prohibits the Defendant District from entering into a collective bargaining agreement in the industrial context. State Board of Regents v. United Packinghouse Food and Allied Workers, Local No. 1258, 175 N.W.2d 110. That opinion also held the Board of Regents `may voluntarily meet and consult with representatives of groups of employees to discuss wages, working conditions and grievances.' That is the historical procedure employed by the District and the Union in the present case in order to establish the District's policy on wages, working conditions and grievances."
Collective bargaining agreements in the industrial sense are not contracts of employment but trade agreements entered into between representatives of the employees and the employer resulting in an accord as to wages, working conditions and other matters. J. I. Case Co. v. National Labor R. Board, 321 U.S. 332, 335, 64 S.Ct. *407 576, 579, 88 L.Ed. 762; American Fed. of State, Cty. & M. Emp. v. City of Cleveland, 484 F.2d 339, 343 (6 Cir. 1973). Such an agreement controls the industrial contracts of employment but is not itself a contract of employment. National Labor Rel. Bd. v. Wooster Div. of Borg-W. Corp., 236 F.2d 898, 904-905 (6 Cir. 1956), aff'd in part and rev'd in part, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823; American Fed. of State, Cty. & M. Emp. v. City of Cleveland, 484 F.2d at 343.
Continuing from the holding as to collective bargaining the court in State Board of Regents stated in regard to collective bargaining agreements:
"The Board of Regents has the power and authority to meet with representatives of an employee's union to discuss wages, working conditions and grievances if it so desires. It can do so without becoming obligated to meet with the representatives of any other group of employees. The agreed terms could be adopted by the Regents in a proper legislative manner. Such action does not involve an improper delegation of legislative powers to private persons as there is no compulsion to sign an agreement and the final decision remains in the Board of Regents." Id. 175 N.W.2d at 113.
Although holding the Board had no power or authority to enter into a collective bargaining agreement in the private industrial sense the court stated:
"However, we can see no reason why the Regents, if they so desire, could not enter into one written contract with the union binding all members of the union agreeing to such representation as long as the terms of the contract are within the statutory authority of the board and contains no terms of employment which could not be included in the standardized contract for individual employees." Id. 175 N.W.2d at 117.
In the light of the foregoing statements from State Board of Regents the parties here had the power and authority to enter into an enforceable agreement as long as it was not in the industrial context. Therefore, the agreement involved would not be void because of lack of authority by the school board if it otherwise resulted in an enforceable agreement. The question is whether the parties did enter into an enforceable agreement.
III. The Union in support of its proposition there is an enforceable contract which is subject to judicial construction or interpretation in a proceedings under rule 262, R.C.P., insists the validity of an agreement is not always dependent upon the signature of the parties being affixed to the document asserted to be a "contract."
The School District presents no argument in regard to this issue.
It is important to note at the outset collective bargaining agreements are contracts. Falsetti v. Local Union No. 2026, United Mine Wkrs., 400 Pa. 145, 161 A.2d 882, 893, 87 A.L.R.2d 1082, 1096; 51 C.J.S. Labor Relations § 217; 48 Am.Jur.2d, Labor and Labor Relations, Section 1206.
In the absence of a statute requiring a signature, such as the statute of frauds, or an agreement that the contract shall not be binding until it is signed signatures of both parties are not essential for establishment of a binding contract if manifestation of mutual expressions of assent is otherwise shown. Henderson v. Henderson, 136 Iowa 564, 567, 114 N.W. 178, 179; Ross v. Gordon, 252 Iowa 899, 904-905, 109 N.W.2d 208, 211-212; 17 Am.Jur.2d, Contracts, section 70. Even when neither party has signed a contract it still may be binding if there has been mutual assent. Chudnow Const. Corp. v. Commercial Discount Corp., 48 Wis.2d 653, 180 N.W.2d 697, 698.
1 Corbin on Contracts, section 31, p. 114 states:
"If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract. So far as the common law is concerned, the *408 making of a valid contract requires no writing whatever; and even if there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent." See authorities cited in footnote 49 of this treatise.
To the same effect see 1 Williston on Contracts, (Third Ed.), section 90A and authorities cited in footnote 15.
In our opinion the foregoing citations express the correct principle and the one followed in this state.
The Union reaches the contention stated at the commencement of this division by pointing to the trial court's examination of the witnesses Wiedersberg, the Secretary and Administrative Assistant for Business Affairs, and Ramstad, the Assistant Superintendent for Personnel Research and Information Services of the School District. It is true in the court's examination of these witnesses that inquiry was made as to whether the "working agreement" was signed by anyone. However, we have studied the court's examination of these witnesses and it is our conclusion the court was attempting by this examination to determine whether there had been such a manifestation of mutual expressions of assent that an enforceable contract could be found to exist. Lack of the parties' signatures, although perhaps a factor considered by the trial court in reaching the conclusion that the "working agreement" did not constitute a contract subject to interpretation by the court in a declaratory judgment action, was obviously not the determining factor. We are unable to agree with the contention urged by the Union that the court was troubled by this fact.
IV. The Union briefly argues the School District is estopped from denying the validity of the agreement because of the adoption of the agreement by the school board. Defendant makes no argument on this issue.
Evidently, the Union refers here to promissory or equitable estoppel. Such estoppel requires proof of three essential elements: (1) a clear and definite oral agreement; (2) that plaintiff acted to his detriment solely on said agreement; and (3) that a weighing of all the equities entitles plaintiff to the equitable relief of estoppel. Shell Oil Company v. Kelinson, 158 N.W.2d 724, 729 (Iowa 1968). See also Johnson v. Pattison, 185 N.W.2d 790, 794-795 (Iowa 1971). The issue of estoppel must ordinarily be plead but it is enough if facts relied upon are set out. An examination of plaintiff's petition clearly shows the issue of estoppel was neither pled nor in effect set out in the factual allegations. Thus, this issue presents nothing for review. See Johnson v. Pattison, supra.
V. The trial court found the process of negotiating followed by the parties was adopted by the school board in order to give the employees of the custodial and maintenance crews a voice in the matter of labor relations concerning wages, hours, working conditions and other matters of that nature. We agree with this finding.
In arriving at its conclusion that the stated school board policy was not a legal, binding, enforceable contract as the term is used in rule 262, R.C.P., the court expressed the view it was not dealing with a binding agreement which resulted from a bilateral offer and acceptance for valuable consideration.
Usually as an essential prerequisite to the formation of an informal contract there must be an agreement; a mutual manifestation of assent to the same terms. The agreement is ordinarily reached by a process of offer and acceptance. Calameri and Perillo on Contracts, section 11; 1 Williston on Contracts (Third Ed.), sections 22-23.
By reason of the basic procedure employed over a period of years in arriving at a board policy relating to the working conditions and compensation of custodial and maintenance employees of the School District the Union and its members knew or had reason to know the school board had *409 the ultimate authority and power to accept, reject or modify any and all demands or requests made by the representatives of the Union without the possibility of any sanctions such as strikes or boycotts being taken by the Union membership.
As a matter of fact, there is evidence the Union had disagreed with certain portions of the recommendations which were finally adopted as the policy of the school board but the custodial employees continued to work under the finalized policy. It was also understood the board had complete authority to reject recommendations on policy made by the School District's representatives; that the negotiations with representatives of the School District were only a part of the process by which the school board makes its final policy determination with regard to the wages and working conditions of the custodial and maintenance employees.
It must be conceded that contracts of employment between the School District and the individual members of the maintenance and custodial organization were in existence at the time material here as a result of the initial hiring of these individuals. However, these are not the contracts relied on by the Union as a basis for declaratory relief.
The question is whether the stated school policy relative to working conditions and compensation of maintenance and custodial employees constituted an enforceable contract which would entitle the Union to either a money judgment or specific performance because of a breach.
In the first place, the Union must sustain its contention the board policy as adopted is an enforceable contract in light of the background detailed earlier regarding the knowledge of the Union and its members as to circumstances and conditions under which the negotiating process was employed.
In order to carry this burden the Union must point to words or acts of the School District which tend to show such an outward manifestation by the School District to the Union representatives as would warrant a finding the School District assented that the recommendations and suggestions adopted as the board policy following the negotiation process would constitute terms and provisions of the contract of employment between the School District and the maintenance and custodial employees.
Review of the record in this matter fails to disclose such evidence. There being no offer there could be no acceptance essential to formation of an enforceable contract.
We hold the "working agreement" adopted by the school board of the District as a board policy relative to the relationship between the District and its custodial and maintenance employees was not established under this record as an enforceable contract. Hence, the trial court was without jurisdiction or statutory authorization to proceed by way of declaratory judgment.
The case is therefore
Affirmed.