# Establishment of a Labor Relations System for Employees of the Federal Labor Relations Authority

Neither Executive Order No. 11,491 nor Title VII of the Civil Service Reform Act of 1978, nor any other law, precludes the Federal Labor Relations Authority and other offices administering Federal labor-management relations law from establishing a collective bargaining system for their employees.

The FLRA does not need specific statutory authority in order to bargain with its employees, in light of the general federal policy favoring bargaining by public employees.

Any labor relations system established by the FLRA must comply with Title VII and other relevant federal laws and executive orders.

In the absence of specific statutory authorization, a labor relations system established in the federal sector may not provide for binding arbitration by an outside third party, because federal officials may not delegate to a private party decisionmaking authority vested in them by Congress; however, advisory arbitration would be legally permissible.

July 1, 1980

## MEMORANDUM OPINION FOR THE EXECUTIVE DIRECTOR, FEDERAL LABOR RELATIONS AUTHORITY

This responds to your request for our opinion regarding the legality of establishment by the Federal Labor Relations Authority (FLRA) of a labor relations system for its employees. Specifically, you have asked (1) whether the FLRA [1] lawfully may establish for its own employees a labor relations system, including, for example, provisions for exclusive recognition of an employee representative, bargaining agreements, unfair labor practices, and negotiated grievance procedures; and (2) whether such a system lawfully could provide for the use of binding or advisory arbitration by an outside third party for the resolution of disputes arising thereunder. According to your opinion request, you have concluded that you lawfully may establish a labor relations system for FLRA employees, but that, absent a statute or executive order, provision for binding arbitration is not legal. We concur in these con-

---

[1] Your opinion request extends also to the Federal Service Impasses Panel, as well as the General Counsel of the FLRA. The Federal Service Impasses Panel provides assistance in resolving negotiation impasses between agencies and employee representatives. 5 U.S.C. § 7119. The General Counsel of the FLRA investigates unfair labor practices, prosecutes complaints, and exercises such other powers as the FLRA may prescribe. 5 U.S.C. § 7104(f). Further references in this memorandum to the FLRA also encompass the Impasses Panel and the General Counsel, unless otherwise indicated.

clusions. In our opinion, you lawfully may establish a labor relations system for FLRA employees so long as the system does not violate any of the prohibitions in the federal service labor-management relations statute, 5 U.S.C. § 7101 *et seq.,* or delegate to a third party any final decisionmaking authority.

Because you may not lawfully delegate to a third party the responsibility given you by Congress, you may not enter into an agreement to submit to binding arbitration. If the FLRA believes that advisory arbitration would be useful, such advisory arbitration is a lawful mechanism for the resolution of disputes.

## I.

The FLRA was first created by Reorganization Plan No. 2 of 1978, 43 Fed. Reg. 36,037, as an independent establishment in the executive branch to manage the labor relations system for that branch. It assumed responsibility for certain functions previously performed under Executive Order No. 11,491, as amended,[2] by the Federal Labor Relations Council, the Civil Service Commission, and the Assistant Secretary of Labor for Labor Management Relations. To determine which employees were covered by Reorganization Plan No. 2, and thus within the jurisdiction of the FLRA, it was necessary to refer to Executive Order No. 11,491.[3] No mention of a labor relations system for FLRA employees was made in the Reorganization Plan.

Executive Order No. 11,491, promulgated in 1969, declares in § 1 that each employee of the executive branch "has the right, freely and without fear of penalty or reprisal, to form, join and assist a labor organization or to refrain from any such activity, and each employee shall be protected in the exercise of this right." In § 11, the order provides that an agency and a labor organization that has been accorded exclusive recognition shall meet at reasonable times and confer

---

[2] Subsequent references in this memorandum to Executive Order No. 11,491 refer to that order as amended, unless otherwise indicated.

[3] This reference to Executive Order No. 11,491 is necessary because Reorganization Plan No. 2 simply transferred certain functions previously performed under that order to the FLRA. Section 304 of the plan provided:

Subject to the provisions of Section 306, the following functions are hereby transferred:

(a) To the Authority—

(1) The functions of the Federal Labor Relations Council pursuant to Executive Order 11,491, as amended;

(2) The functions of the Civil Service Commission under Section 4(a) and 6(e) of Executive Order 11,491, as amended;

(3) The functions of the Assistant Secretary of Labor-Management Relations, under Executive Order 11,491, as amended except for those functions related to alleged violations of the standards of conduct for labor organizations pursuant to Section 6(a)(4) of said Executive Order; and,

(b) to the Panel—the functions and authorities of the Federal Service Impasses Panel, pursuant to Executive Order 11,491, as amended.

43 Fed. Reg. 36,037, 36,040–41 (1978). Section 306 of the Reorganization Plan provided that the policies and procedures established under the order would remain in full force and effect.

in good faith with respect to personnel policies and practices and matters affecting working conditions. Negotiated procedures could provide for arbitration of grievances, but either party could file exceptions to an arbitrator's award with the Council (now FLRA), a public body.

Executive Order No. 11,491 does mention briefly organization by employees engaged in administering labor-management relations laws. In § 3(d), the order provides: "Employees engaged in administering a labor-management relations law or this Order shall not be represented by a labor organization which also represents other groups of employees under the law or this Order, or which is affiliated directly or indirectly with an organization which represents such a group of employees." Section 3(a) states that the order applies "to all employees and agencies in the executive branch, except as provided in . . . [§ 3(d) above]." "Agency" and "employee" were broadly defined in § 2 of the order and, but for § 3(d), clearly would include employees of the FLRA. It can be argued that Executive Order No. 11,491 did not totally exclude employees engaged in administering labor-management relations law or the order. The order could be said to extend to them as "employees," provided only that they could not be represented by a labor organization which also represents other groups of employees under the law or the order. Apparently, no such coverage ever has been claimed. Obvious administrative difficulties would arise if those responsible for administering the order were also subject to its provisions. We note this provision of the order to indicate, however, that FLRA employees were not expressly prohibited by the Reorganization Plan or Executive Order No. 11,491 from organizing or bargaining collectively.

In 1978, shortly after Reorganization Plan No. 2 was approved by Congress, the Civil Service Reform Act of 1978 was passed. Pub. L. No. 95-454, 92 Stat. 1111 (codified at 5 U.S.C. § 1101 *et seq.*). Title VII of the Act deals with labor-management relations in the executive branch. Section 7104 gives statutory authority to the FLRA; § 7105 describes its powers and duties.[4] Among other things, the FLRA is to provide leadership in establishing policies and guidance relating to matters under Title VII, and generally is responsible for carrying out the purposes of Title VII. The policies underlying Title VII are set forth in § 7101. In that section, Congress finds that labor organization and collective bargaining in the civil service are in the public interest.

With these general guidelines in mind, we turn to the specific references in Title VII to collective bargaining by FLRA employees. Title VII defines "agency" more narrowly than does Executive Order No.

---

[4] *Title VII did not supersede Executive Order No. 11,491. Section 7135(b) provides that "[p]olicies, regulations, and procedures established under and decisions issued under [any executive order in effect on the effective date of Title VII], shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulation or decisions issued pursuant to this chapter."*

11,491. It provides that "agency" means "an Executive agency . . . but does not include . . . (F) the Federal Labor Relations Authority; or (G) the Federal Services Impasses Panel . . ." 5 U.S.C. § 7103(a)(3). Thus, at the outset, Congress excluded those offices from coverage under the Act. The legislative history does not explain why they were excluded.[5] It does not reveal whether Congress intended thereby to preclude them from participating in any labor relations system or whether it simply thought that such employees could not impartially participate in a system they themselves were administering. As you suggest in your request, the latter is the more reasonable interpretation.

This conclusion is supported by other provisions in Title VII. In § 7101(a), Congress finds that the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them safeguards the public interest and contributes to the effective conduct of public business. Section 7101(b) requires that Title VII be interpreted in a manner consistent with the requirement of an effective and efficient government, which Congress finds is promoted by collective bargaining and participation in labor organizations. Thus, if, as you state, you find that significant benefits of the type contemplated by Congress in passing Title VII would accrue both to the FLRA and to the public from a labor relations system for FLRA employees, the Act should not be construed to prevent establishment of such a system.

That Title VII was not intended to prevent establishment of such a system is further supported by § 7112(b) and § 7112(c). Section 7112(b) provides that the FLRA shall not determine a unit to be appropriate for employee representation if it includes "an employee engaged in administering the provisions of this chapter." Section 7112(c) provides:

> Any employee who is engaged in administering any provision of law relating to labor-management relations may not be represented by a labor organization—
>
> (1) which represents other individuals to whom such provision applies; or
>
> (2) which is affiliated directly or indirectly with an organization which represents other individuals to whom such provision applies.

The inclusion of these sections, restricting unit determination to those units not including FLRA employees and specifying that an FLRA employee may not be represented by an organization which represents individuals covered by Title VII, suggests that FLRA employees may

---

[5] The exclusion did not appear in the early versions of the Act. See, e.g., H.R. 1589, § 3(c), 95th Cong., 1st Sess. (1977); H.R. 9094, § 2, 95th Cong., 1st Sess. (1977); S. 2640, § 701, 95th Cong., 2d Sess. (1978). The subsequent amendment excluding the FLRA and the Impasses Panel·is not explained in the committee reports. See H.R. Rep. No. 1403, 95th Cong., 2d Sess. 39 (1978); S. Rep. No. 969, 95th Cong., 2d Sess. 97 (1978).

be represented by other labor organizations. Representative Udall, who proposed the adoption of the version containing this language, analyzed this section as follows:

> Subsection (c) of the substitute provides that any employee who is engaged in administering any provision of law relating to labor-management relations may not be represented by a labor organization which represents other individuals to whom such provision applies, or which is affiliated directly or indirectly with an organization which represents other individuals to whom such provision applies. This provision, which is not found in the reported Title VII, is intended to help prevent conflicts of interest and appearances of conflicts of interest. For example, an employee of the National Labor Relations Board could not, under this provision, be represented by a labor organization which is subject to the National Labor Relations Act, or which is affiliated with an organization which is subject to the National Labor Relations Act.

124 Cong. Rec. 29,183 (1978). If Congress intended to preclude FLRA employees from participation in any system, it is unlikely that these provisions would be included without further explanation or limitation. We conclude, therefore, that neither Executive Order No. 11,491 nor Title VII precludes the FLRA and other offices administering federal labor-management relations law from establishing a collective bargaining system for their employees.

Nor does any other federal statute or judicial decision we have found preclude the establishment of such a system. The right of public employees to organize collectively and to select representatives for the purposes of engaging in collective bargaining has been labeled a fundamental right. *United Federation of Postal Clerks* v. *Blount,* 325 F. Supp. 879, 883 (D.D.C.), *aff'd,* 404 U.S. 802 (1971). At least one federal agency, the Department of the Interior, has collectively bargained with some of its employees over a period of several decades without statutory authorization. Although this practice was reported to Congress, Congress made no attempt to halt it. *See Recognition of Organizations of Postal and Federal Employees: Hearings on H.R. 6 and Related Bills, Before the House Comm. on Post Office and Civil Service,* 85th Cong., 2d Sess. 275 (1958).[6] In floor debate on Title VII, Representative Ford of Michigan stated: "Collective bargaining is not new to the Federal Government. Under Executive orders, 58 percent of the work force has

---

[6] An attachment to H.R. Rep. No. 2311, 82d Cong., 2d Sess. 8–12 (1952), entitled "Policy Memorandum Covering General Labor Relations Policy For Ungraded Employees of the Department of the Interior," describes the labor relations system administered by that Department.

been organized into exclusive bargaining units, and agreements have been negotiated covering 89 percent of those organized." 124 Cong. Rec. 25,721 (1978).

A substantial number of state cases have declared that absent statutory authorization, governmental bodies have no power to enter into binding agreements with an exclusive bargaining agent of public employees. *See, e.g., International Union of Operating Engineers, Local Union No. 321 (AFL-CIO)* v. *Water Works Bd.,* 163 So.2d 619, 622 (Ala. 1964); *State Bd. of Regents* v. *United Packing House Food & Allied Workers, Local No. 1258,* 175 N.W.2d 110, 113 (Iowa 1970); *Board of Trustees* v. *Public Employees Council No. 51, AFL-CIO,* 571 S.W.2d 616, 621 (Ky. 1978); *Minneapolis Federation of Teachers Local 59, AFL-CIO* v. *Obermeyer,* 147 N.W.2d 358, 366 (Minn. 1966); *City of Springfield* v. *Clouse,* 206 S.W.2d 539, 542–47 (Mo. 1947). These courts generally have based their holdings on the principle that public employers derive their power from the legislature and they cannot abdicate or bargain away the power thus delegated to them. From this, these courts concluded that public employers must have specific statutory authority to bargain collectively. However, these cases can be distinguished from the proposed FLRA system.

Most of these state courts do recognize the right of public employees to organize and to elect agents to meet with their employers. They recognize that the employers have the option, although not the duty, to meet with representatives of employees. For the reasons stated above, the courts refused, however, to sanction either recognition of exclusive bargaining agents or binding arbitration agreements. But in none of these cases had the state legislature established a comprehensive labor-relations system for its employees. In none had the state legislature declared that collective bargaining in the civil service was in the public interest.

On the other hand, some other state courts have approved collective bargaining involving public employees absent specific statutory authorization. In *Chicago Division of the Illinois Ed. Assoc.* v. *Board of Education,* 222 N.E.2d 243, 251 (Ill. App. 1966), the court concluded that the board of education did not need specific legislative authority to enter into a collective bargaining agreement with a sole bargaining agent selected by its teachers and that such an agreement was not against public policy. Apparently the court accepted the board's arguments that the existing general legislation authorizing the board to employ the teachers was sufficient and that collective bargaining does not necessarily (and would not in that particular case) involve an illegal delegation of power to a bargaining agent or other third party. *See also Local 266, International Bro. of Electrical Workers* v. *Salt River Project Agric. Improvement and Power Dist.,* 275 P.2d 393, 397 (Ariz. 1954).

The FLRA clearly has the authority to employ a staff to carry out its responsibilities. 5 U.S.C. § 7105(d). The Federal Service Impasses Panel also is given authority to appoint such individuals as the Panel finds necessary for the proper performance of its duties. 5 U.S.C. § 7119(c)(4). In addition, the FLRA is given broad authority to "take such other actions as are necessary and appropriate to effectively administer the provisions" of Title VII. 5 U.S.C. § 7105(a)(2)(I). Given the broad authority of the FLRA and its component agencies, and the clear policy established by Congress in § 7101, we conclude that the FLRA may establish a labor relations system for its employees. Such a system must, of course, comply with Title VII and other relevant laws and executive orders. The FLRA should be particularly mindful of the necessity to avoid real or apparent conflicts of interest. *See* p. 8, *supra.*

## II.

As stated earlier, we concur in your view that such a labor relations system may not provide for binding arbitration by an outside third party. Whatever system may be established, final decisions legally must rest with the public employer. A federal official may not delegate to a private party decisionmaking authority which has been vested in him or her by Congress. *See generally* 1 K. Davis, Administrative Law Treatise § 3.12 (2d ed. 1978 & Supp. 1980). Absent a binding arbitration clause, a collective bargaining system need not shift the final decisionmaking authority from the public employer. The FLRA, for example, reasonably could refuse to agree to terms of a bargaining agreement which it felt was not in the public interest. The government body would not be compelled to agree with the union representative, or otherwise to relinquish its decisionmaking authority.

In the absence of federal authority on this question, state cases again are instructive. In *Board of Education* v. *Rockford Education Assoc.,* 280 N.E.2d 286, 287 (Ill. App. 1972), the court held that the board could not, through a collective bargaining agreement or otherwise, delegate to another party those matters of discretion that are vested in the board by statute, such as the matters involving the appointment of teachers and the fixing of salaries. The court explained that although the board did not need specific legislative authority to enter into a collective bargaining agreement, the ultimate determination of "qualification" for a given job could not be delegated by the board to any outside agency, including the American Arbitration Association. *Id.* at 288. In *Gary Teachers Union Local No. 4* v. *School City of Gary,* 284 N.E.2d 108, 114 (C.A. Ind. 1972), the court held, with one judge dissenting, that the school could enter into a binding arbitration agreement. This decision was based, however, on the conclusion that the Indiana Uniform Arbitration Act is broad enough to include public employment.

715

Sections 13 and 17 of Executive Order No. 11,491 did allow binding arbitration in the absence of specific legislative authorization therefor. Such arbitration was limited, however, to operation within the system established by the order. Section 17 provided that arbitration could be used by the parties only when authorized or directed by the Impasses Panel. The question whether a matter was subject to arbitration under an existing agreement could be submitted to the Assistant Secretary of Labor for decision. Executive Order No. 11,491, § 13(d). If arbitration did occur, either party could file exceptions to the arbitrator's award with the Federal Labor Relations Council. *Id.* at § 13(b). Under this system, arbitral decisions were not truly "binding" in that ultimate authority to resolve appeals was vested in an executive body. The system established by Title VII also places ultimate responsibility on an executive body—the FLRA. 5 U.S.C. § 7122(a). There is no executive body, however, to which appeals from binding arbitral decisions in FLRA disputes could be addressed.

If the FLRA believes that advisory arbitration would promote the efficient and effective conduct of its affairs, such a clause legally is permissible. As early as 1962, advisory arbitration was authorized in federal employment. *See* Executive Order No. 10,988, § 8(b) (1962) (revoked by Executive Order No. 11,491).

Leon Ulman
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
