83 N.J. Super. 389 (1964)
200 A.2d 134
NEW JERSEY TURNPIKE AUTHORITY, A BODY CORPORATE AND POLITIC, CREATED BY AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF, AND NEW JERSEY HIGHWAY AUTHORITY, A BODY CORPORATE AND POLITIC CREATED BY AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF-INTERVENOR,
v.
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, LOCAL 1511, AND COUNTY AND MUNICIPAL EMPLOYEES UNION; DANIEL DONAHUE, AARON SHERMAN, THOMAS McCLOSKEY, IRVING STEIN, WILLIAM LYONS, WILLIAM VIVERS, NICHOLAS PITUCCO, WALTER MARTYNIAK, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 723, FRANK SANTANGELO, FRANK P. MORRO, ANTHONY KOZIEROWSKI, ALEXANDER DONOFRIO, GENNERO BATTAGLIA, BOYD HITCHNER AND ROBERT FADELEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 29, 1964.
*391 Mr. Grover C. Richman for plaintiff (Messrs. Richman, Berry & Ferren, attorneys).
Mr. Theodore W. Geiser for plaintiff-intervenor, New Jersey Highway Authority (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
Mr. Emil Oxfeld for defendants American Federation of State, County and Municipal Employees, AFL-CIO, Local 1511, et al. (Messrs. Rothbard, Harris & Oxfeld, attorneys).
*392 Mr. Howard A. Goldberger for defendants Local 723 IBT, et al. (Messrs. Goldberger, Ostrow, Siegel & Finn, attorneys).
WICK, J.S.C.
This is a suit wherein the New Jersey Turnpike Authority (hereinafter referred to as Turnpike) seeks to permanently enjoin certain unions and their officers, agents and employees from inciting, organizing, conducting, supporting or participating in any strike, slowdown or other impediment to work against the Turnpike or involving any of its employees. Further, the Turnpike seeks a declaratory judgment determining the following: (1) whether the Turnpike may engage in collective bargaining with the defendant unions which purport to represent certain employees of the Turnpike; and (2) whether the employees of the Turnpike have the right to strike.
Defendants include the American Federation of State, County and Municipal Employees, AFL-CIO, Local 1511, and County and Municipal Employees Union (hereinafter referred to as Local 1511); and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 723 (hereinafter referred to as Local 723). The individual defendants include Daniel Donahue, secretary-treasurer of Local 1511; Aaron Sherman, recording secretary of Local 1511; Thomas McCloskey, a member of the executive board of Local 1511; Irving Stein, William Lyons and William Vivers, trustees of Local 1511; Nicholas Pitucco and Walter Martyniak, business agents connected with Local 1511; Frank Santangelo, secretary of Local 723; Frank P. Morro, Anthony Kozierowski, Alexander Donofrio, Gennero Battaglia, Boyd Hitchner and Robert Fadeley, members of Local 723, all of whom are alleged to have been active in promoting and encouraging the threatened strike hereinafter referred to.
Subsequent to the filing of the complaint by the Turnpike, the New Jersey Highway Authority was permitted to intervene as a party-plaintiff.
*393 The Turnpike has made the following factual allegations in its complaint: On January 1, 1961 the Turnpike jointly executed with defendant Local 1511 a "Statement of Employees Relations Policy" setting forth wages, hours and working conditions for its toll and maintenance employees for the period commencing January 1, 1961 and terminating January 11, 1964. On October 16, 1963 defendant Local 723 advised the Turnpike that it "has been selected as sole collective bargaining agent by a majority of the employees in a bargaining unit consisting of all toll collectors and maintenance employees, excluding officers, clerks," and demanded that the Turnpike "recognize it [Local 723] as such sole and exclusive representative on behalf of said employees for the purpose of collective bargaining in regards to wages, hours and other terms and conditions of employment." On October 23, 1963 defendant Local 723 demanded that the Turnpike must "bargain" with it in the negotiation of a labor contract, and if the Turnpike failed to do so, Local 723 would authorize the "undertaking of concerted activity by the Union and all of its affiliates." On October 25, 1963 defendant Local 1511 requested a meeting with the Turnpike for the purpose of reopening the agreement of January 1, 1961 and discussing the provisions thereof.
Subsequent to the occurrences described above, all of the defendants and other representatives of both Local 1511 and Local 723 have repeatedly verbally demanded that the Turnpike meet with them for the purpose of collective bargaining to negotiate a new labor relations agreement for the year commencing January 1, 1964, and have threatened to organize and conduct a strike, slowdown or other impediment to work by the employees of the Turnpike.
On December 2, 1963, the same day that the complaint was filed, the Turnpike sought interim relief in the form of an ex parte restraint. In support thereof the Turnpike produced three witnesses who testified orally. Howard S. Heydon, the Director of Maintenance for the Turnpike testified that the physical plant includes, inter alia, approximately 200 bridge *394 structures, 131 miles of four- and six-lane highway, 15 service areas composed of restaurants, gasoline stations and other facilities, and toll booths at each of 21 interchanges. In the event of a strike or work stoppage on the part of all or most of the Turnpike's 350 employees, Heydon stated that even if he was able to utilize his supervisory personnel numbering 50: "it would be impossible to properly maintain the Turnpike in a safe fashion." Further, the remaining supervisory personnel would be unable to handle any of the major emergency situations which could arise, to wit, the clearing of obstructions from the roadway in the event of an accident; maintaining the roadway in a safe condition in the event of snow, ice or other severe storm; or the closing of the road in the event of fog, flood or washout. He observed that any strike, slowdown or other impediment to work against the Turnpike or its operations would "result in irreparable injury to the public and to the facilities of the Turnpike."
Robert E. Mosher is the Assistant Comptroller for the Turnpike and is familiar with its financial affairs. He testified that the Turnpike's indebtedness was in the amount of $360,264,000, as of October 31, 1963. The average gross revenue per day as of the year 1963 and up to October 31, 1963 was $123,704 per day. The daily financial requirement is $59,314, not including any provision for sinking funds. As indicated by Mosher, "any strike would have an irreparable damage to the revenues of the Turnpike," and would result in a deficit operation, thereby adversely affecting and hindering the Turnpike's ability to redeem its bonded indebtedness.
The last witness to testify was Oliver K. Compton, Jr., Assistant to the Executive Director of the Turnpike. On or about November 17, 1963 he received a letter dated November 16, 1963, signed by Frank Santangelo, secretary-treasurer of Local 723, a copy of which has been placed into evidence. The letter, written under the letterhead of Local 723, is addressed to the members of Local 723 employed by the Turnpike between interchanges 9 and 18. Attendance was requested at a meeting to be held on November 20, 1963. Listed *395 as one of two subjects to be considered was a "Strike Vote & Strike Plans." Upon information and belief, Compton testified that 108 employees were present at the meeting and 103 employees voted in favor of a strike. He indicated, further, that another meeting was held on November 22, 1963 by the employees of interchanges 8 through 1. 80 employees attended this meeting, 79 voting affirmatively to conduct a strike.
Based upon the foregoing testimony and the affidavits and pleadings filed in this cause, the Turnpike was granted an ex parte restraint. The return date thereof was adjourned until January 29, 1964, at which time the court determined that the restraint previously imposed should continue in force and effect and that the dispute should be decided upon briefs to be submitted by the litigants.
This dispute concerns itself, primarily, with the construction of the Constitution of 1947, Art. I, par. 19, wherein it is provided that:
"19. Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing."
The employees of the Turnpike are "persons in public employment." The Turnpike, a body corporate and politic, is established in the State Highway Department, and "constituted an instrumentality exercising public and essential governmental functions," N.J.S.A. 27:23-3, among which are the facilitation of vehicular traffic, the removal of the present handicaps and hazards on the congested highways in the State, and the provision for "the construction of modern express highways embodying every known safety device," N.J.S.A. 27:23-1. See City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377 (1951).
In regard to the question whether public employees have the right to strike, the only case in this State which directly presented this issue was Donevero v. Jersey City *396 Incinerator Authority, 75 N.J. Super. 217 (Law Div. 1962), set aside on other grounds, McAleer v. New Jersey Incinerator Authority, 79 N.J. Super. 142 (App. Div. 1963). Involved therein were several employees of an incinerator authority who were discharged without a hearing, for having engaged in a strike against the authority. The discharged employees brought suit against the authority for reinstatement of their employment and for back pay. Although the ruling of the Law Division that by striking the employees had lost their employment notwithstanding the Veterans' Tenure Act, N.J.S.A. 38:16-1, which provides that veterans employed by government may not be removed except for good cause shown, was reversed by the Appellate Division, the lower court's finding that as a matter of law public employees do not have a right to strike was specifically affirmed. This court heartily endorses and agrees in principle and application with this thesis.
This prohibition is not without good reason, for the public health and safety must be safeguarded.
"Under our system, the government is established by and run for all of the people, not for the benefit of any person or group. The profit motive, inherent in the principle of free enterprise, is absent. It should be the aim of every employee of the government to do his or her part to make it function as efficiently and economically as possible. The drastic remedy of the organized strike to enforce the demands of unions of government employees is in direct contravention of this principle." Norwalk Teacher's Association v. Board of Education, 138 Conn. 269, 83 A.2d 482, 484 (Sup. Ct. Err. 1951).
It would be a derogation of the authority of this State's legally constituted public officials to permit public employees to strike, for the right to determine conditions of employment and rates of compensation rests exclusively with the Turnpike. For this reason, a strike would be unable to accomplish the relief sought. Not only would a strike be ineffectual, but any such action, the intended result of which is the disabling of government, is inimical to the public interest and will not be tolerated.
*397 Defendant Local 723 contends that it has the right to collectively bargain with the Turnpike. Public employees have many desires similar to those of persons in private employment, to wit, fair rates of pay, impartial opportunities for advancement, safe working conditions, review of grievances, and reasonable hours of work. Nothing in the Constitution or statutes of this State renders unlawful the organization of public employees for their mutual interest. Further, they may have representatives of their own choosing present their "grievances and proposals" to the proper authorities; however, the public interest is always paramount.
The right to organize does not carry with it the right to collective bargaining. The term "collective bargaining" is conspicuously absent from the rights conferred upon public employees by virtue of the N.J. Const., Art. I, par. 19. The Attorney General of New Jersey has aptly set forth the reasons therefor, in a memorandum opinion dated October 20, 1954, in response to an inquiry from the South Jersey Port Commission:
"The concept of collective bargaining, as generally understood and applied in the field of private industry, implies bargaining sanctions and weapons not admissible to public employees, such as the right to strike, and other incidents of the private employment relationship not appropriate in the public employment field. It also implies two bargaining entities of co-equal status, each with unlimited power to enter into binding commitments. This does not apply in the case of the state in relation to its employees."
Although the Turnpike is not obliged to engage in collective bargaining, it is under an affirmative duty to meet with its employees or their chosen representatives and consider in good faith the "grievances and proposals." However, any decision reached must be the result of the independent judgment of Turnpike, taking into consideration, inter alia, the "grievances and proposals" of its employees.
It should be emphasized that any one or more representatives may speak only for those employees who chose them. The Turnpike has no right to recognize a representative *398 of only a segment of its employees as agent for all of the employees of the Turnpike. Therefore, if five separate groups of Turnpike employees each have a different representative, all five representatives are entitled to recognition.
Defendant Local 723 contends that the Anti-Injunction Act, N.J.S. 2A:15-51 et seq., is applicable to the controversy sub judice. As previously noted, the Constitution of 1947 expressly confers upon private employees the right to bargain collectively. Implicit therein is the right to strike, picket and employ whatever other techniques may exist to further peaceably the desires of persons in private employment. It was these interests alone which the Anti-Injunction Act was intended to protect. To include within its cloak the relationship of public employer and public employee would be to ignore the dichotomy of rights as they are found in Art. I, par. 19 of the Constitution of 1947.
"The application of the law according to the spirit of the legislative body remains the principal objective of judicial interpretation. 2 Sutherland, Statutory Construction (3d ed.), sec. 4501, p. 315." Donevero v. Jersey City Incinerator Authority, supra, at page 224. The Legislature must be presumed to have acted within the bounds of the Constitution, and that presumption requires that the Anti-Injunction be held inapplicable to the relationship of public employer and public employee.
Defendant Frank Morro has submitted his affidavit to the court. It recites many alleged facts concerning prior negotiations and contracts between the Turnpike and various labor unions. The court is unconcerned with these matters. They can in no way work an estoppel against the Turnpike. A body corporate and politic, such as the Turnpike, cannot by its own act circumvent or nullify the Constitution of this State.
The various technical objections raised by defendant Local 723 with regard to the granting of temporary relief are without merit.
*399 The court finds that the employees of the New Jersey Turnpike Authority and the defendant labor organizations, their officers, agents, servants and employees, have no right to incite, organize, conduct or participate in any strike, slowdown or impediment to work against plaintiff New Jersey Turnpike Authority, and that any such conduct is violative of the Constitution of New Jersey. Neither does the Turnpike have the right to engage in collective bargaining with its employees or their chosen representatives.
To protect the Turnpike against the future occurrences of the acts previously enumerated and found to be illegal and, further, because irreparable harm would otherwise ensue to the detriment of the New Jersey Turnpike Authority and the motoring public using its facilities, a permanent injunction will be granted. The injunction will not run against Local 1511, its officers, agents, servants and employees, for the reason that there has been no showing that Local 1511 or any of its representatives or adherents have at any time advocated or participated in any activity leading to a strike or any other form of work stoppage.
Judgment may be entered in accordance herewith.