## 18644

The CITY OF COLUMBIA, Appellant, v. NIAGARA FIRE
INSURANCE COMPANY, Respondent

(154 S. E. (2d) 674)

Messrs. *John W. Sholenberger* and *Edward A. Harter, Jr.,* of Columbia, *for appellant,*

Messrs. *Herbert, Dial & Windham,* of Columbia, *for respondent,*

May 8, 1967.

LIONEL K. LEGGE, Acting Associate Justice:

The City of Columbia brought this action to recover $1,-247.02, plus penalty, allegedly due it by Niagara Fire In-

surance Company as part of Niagara's business license fee for the year 1963 under the city's license ordinance. Niagara having answered, denying the alleged liability, the case was heard on the pleadings and an agreed statement of facts before the Honorable Louis Rosen, Presiding Judge, from whose order dismissing the complaint the city has appealed.

Section 1 of the ordinance provides that every person, firm or corporation engaged or intending to engage in any business in the City of Columbia "shall obtain and pay for on or before the first day of April, a license therefor * * *."

Section 3 provides that "where the amount of license is dependent upon the volume of business done, the computation shall be on the basis of the volume of business done during the preceding year * * *."

Section 4 prescribes, in the case of fire insurance companies, a license fee of two (2%) per cent on all gross premiums collected through offices or agents located in the city or collected on policies written on property located in the city, wherever the premiums are collected.

During the year 1962 Eagle Fire Insurance Company did business in the City of Columbia, having paid for and been issued a license for that year based upon gross premiums collected by it in 1961. During 1962 it collected gross premiums amounting to. $62,350.78. Effective as of 11:59 p. m. on December 31, 1962, it sold its Columbia business to Niagara under a Reinsurance and Assumption Agreement, to which we shall later refer. Eagle did no business in Columbia after December 31, 1962, and sought no license in 1963.

Niagara did business in Columbia during 1962, paying for that privilege the required license fee based upon gross premiums collected by it in 1961. It continued to do business there in 1963, and for that year it paid a license fee based upon gross premiums collected by it in 1962. The city contends in this action that for the privilege of doing business in 1963 Niagara should pay, in addition, a license fee of two (2%) per cent of the gross premiums collected by

Eagle during 1962. It bases that contention upon the Reinsurance and Assumption Agreement of December 31, 1962, between Niagara and Eagle, under which Niagara then acquired Eagle's Columbia business and assumed Eagle's policy liability on all insurance risks of that business in force as of 11:59 p. m. of that date or to become effective thereafter.

The respondent, Niagara, contends here, as it did in the trial court, that the issue should be resolved from the terms of the ordinance alone, and that the Reinsurance and Assumption Agreement is irrelevant. The trial judge rejected that contention, and correctly so in our opinion. For it seems to us that consideration of the effect of that agreement upon the volume of Niagara's 1963 business is essential to realistic appraisal of Niagara's status as a 1963 licensee under the ordinance.

The license ordinance being a tax measure, its scope may not by implication be extended beyond the clear import of its language. *Meredith v. Elliott,* 247 S. C. 335, 147 S. E. (2d) 244; *Adams v. Burts,* 245 S. C. 339, 140 S. E. (2d) 586. Niagara contends that under this rule we should construe Sections 3 and 4 as limiting its liability for 1963 license tax to two (2%) per cent of gross premiums collected by it in 1962, and should not take into consideration the additional volume of its 1963 premium collections resulting or to result from its acquisition of Eagle's business on the last day of 1962.

The true guide to statutory construction is not the phraseology of an isolated section or provision, but the language of the statute as a whole considered in the light of its manifest purpose. In applying the rule of strict construction the courts may not give to particular words a significance clearly repugnant to the meaning of the statute as a whole, or destructive of its obvious intent. Every technical rule as to construction of a statute is subservient to and must yield to the expression of the will of the legislature, since all rules of statutory construction have for their sole object the discovery of the legislative intent

and are valuable only insofar as in their application they aid the courts in their endeavor to ascertain that intent. *Pickens v. Maxwell Bros. & Quinn,* 176 S. C. 404, 180 S. E. 348; *Creech v. South Carolina Public Service Authority,* 200 S. C. 127, 20 S. E. (2d) 645; *Brewer v. Brewer,* 242 S. C. 9, 129 S. E. (2d) 736.

The obvious purpose of the license ordinance is to ▉ impose a tax, or license fee, upon the privilege of doing business in the city during the current year. Implicit in that purpose is the requirement that the tax be fair and nondiscriminatory. In many classes of business the license fee is calculated on gross receipts reasonably to be expected during the license year, using the amount of such receipts during the preceding year as a measure for computing the amount of the fee. In the case of fire insurance companies, it is calculated on the amount of gross premiums collected during the preceding year, that formula being based upon the presumption that the amount of premiums to be received during the license year will reasonably approximate that received during the preceding one. Basic to the purpose of the ordinance, and therefore to our interpretation of its meaning, is the fact that the volume of business for the preceding year is not the subject of the tax, but is merely a reasonably fair basis upon which to estimate the volume of such business during the license year; it is in respect of the latter that the license tax is imposed.

If, as Niagara concedes, it is reasonable to assume ▉ that the volume of gross premiums from its own business in 1962 would approximate the volume of such premiums from that business in 1963 and would therefore be a reasonable base upon which to calculate its 1963 license tax, it is no less reasonable to assume that the volume of its 1963 premiums would be augmented by the amount of gross premiums derived from Eagle's 1962 business, which at one minute before January 1, 1963, became a part of Niagara's. And since the 1963 license tax is imposed in respect of the estimated 1963 business, it would

seem that no injustice to Niagara would result from requiring it to pay a license tax calculated upon its 1963 gross premiums as so augumented. Such, we think, is the true intent and meaning of the license ordinance. To hold otherwise would be to give to it a construction inconsistent with its plain intent, deprive the city of license revenue from a business actually being conducted within its jurisdiction during the license year, and discriminate in favor of Niagara and against those fire insurance companies that would pay, as required by the ordinance, a license fee based upon a fair calculation of their gross premium receipts for the license year.

The question here presented appears to be of novel impression in this jurisdiction. But in every decision in other jurisdictions that has come to our attention it has been held, under comparable statutory provisions, that an insurance company which takes over another's business at the beginning of the license year or at the end of the preceding year is liable for a license fee based upon the volume of the business as so combined.

In *Great American Insurance Co. v. Commonwealth* (1955), 197 Va. 449, 90 S. E. (2d) 108, where the intercorporate transaction was a merger, the surviving company was held so liable on the theory that after the merger the two companies "continued to do business in Virginia under the Great American name."

*Rinehart v. Reliance Insurance Co.* (1962), 273 Ala. 535, 142 So. (2d) 254, was concerned with similar liability following the merger of Fire Association of Philadelphia and its wholly owned subsidiary, Reliance Insurance Company of Philadelphia, under which Fire Association of Philadelphia continued as the surviving corporation under the name of Reliance Insurance Company. Against the contention that the premiums received by Reliance Insurance Company of Philadelphia in 1957 could not be made the basis of a license tax under the Alabama statute for the calendar year 1958 because that company had ceased to exist and could not do

business in Alabama in 1958, the court held that since the net practical result of the merger was that Reliance Insurance Company continued in 1958 to do the combined business of the two merging companies it should pay a license tax computed on the premiums received by both during the preceding year.

In *Houseal v. Union Bankers Insurance Co.* (1964), 277 Ala. 140, 167 So. (2d) 708, the issue was as to the amount of 1963 license tax payable by a foreign insurer which had done business in Alabama in 1962 and which had bought a domestic insurer in that year. It was there contended that the premiums received by the domestic insurer in 1962 could not be included in the calculation of the foreign insurer's license tax for 1963 because the statute by its terms applied only to foreign insurance companies. But the court emphasizing the prospective nature of the tax, said:

"The 1963 tax was payable in advance. Since the merger took place in 1962, only one insurance company, Union Bankers Insurance Company, was in existence in 1963 when the tax year began. We therefore conclude that the tax was properly computed on the total premiums of the surviving company, irrespective of whether its 1962 merger made it successor to another foreign corporation or to a domestic corporation."

*Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. (2d) 489, 140 N. E. (2d) 687, was concerned with the effect upon the liability of Lincoln National Life Insurance Company for license tax for the period July 1, 1953 to June 30, 1954, of a reinsurance and assumption agreement, effective January 1, 1953, under which Lincoln had acquired the assets and assumed the liabilities of Reliance Life Insurance Company of Pittsburgh and was substituted in place of Reliance as the primary insurer on all of its insurance contracts. The Illinois statute provided for a license tax based upon the gross amount of premiums received during the preceding calendar year, and further provided that in case of "merger, consolidation, reorganization or reincor-

poration" the premiums received by all parties thereto should, for the purpose of determining the amount of the tax, be regarded as received by the surviving or new corporation. The court, rejecting Lincoln's contention that the statute was not applicable because the transaction between it and Reliance was not a merger or consolidation or reorganization or reincorporation, held that although after the effective date of the agreement Reliance retained its formal corporate identity pending its contemplated dissolution, the net practical result of the transaction was that Lincoln continued to do the combined business of the two corporations during the period for which the license was required, and that Lincoln's liability for the additional license fee, although not within the letter of the statute, was within its object, spirit and meaning.

In the case of Insurance Company of *North America v. Long* (*Tenn.* 1965), 389 S. W. (2d) 245, the facts were as follows: For many years prior to January 1, 1961, Insurance Company of North America and its subsidiary, Indemnity Insurance Company of North America, both corporations foreign to Tennessee, did business in that state. On July 5, 1960, Insurance Company of North America and Indemnity Insurance Company of North America entered into an agreement of liquidation and reinsurance, effective at 12:01 a. m. January 1, 1961, under which Insurance Company of North America agreed to "assume, pay and fulfil all debts and obligations of the subsidiary, including all taxes assessed or to be assessed against the subsidiary." On August 17, 1960, Indemnity filed with the Commissioner of Insurance and Banking of Tennessee a statement of gross premiums paid by or for policyholders residing in Tennessee, on property located in that state, during the months of January through June, 1960, and paid the license tax of two per cent of gross premiums received, as provided in the Tennessee statute, for doing business in that state. After the liquidation and reinsurance agreement became effective, the Commissioner demanded that Insurance Company of North America file a return showing

gross premiums paid by or for policyholders of Indemnity during the months of July through December, 1960, and pay the two per cent tax thereon. Insurance Company of North America paid the amount of tax so claimed, under protest, and sued to recover the amount so paid. The trial court held that under the Tennessee statute providing for continued payment by a foreign insurance company of a privilege tax upon its business remaining in force in the state after its license has expired or it has ceased to transact new business in the state, Insurance Company of North America was liable for the privilege tax on gross premiums received from policyholders of its subsidiary after the merger. On appeal, the judgment was affirmed, the court saying:

"It is clear to us that when complainant took over the assets of Indemnity and assumed its obligations, it became liable for the tax, although Indemnity discontinued doing business in this state and elsewhere. This is so because the tax is prospective as held by the Chancellor and with which complainant has no quarrel. The policies of Indemnity remained alive and became assets of complainant. In other words, complainant stepped into the shoes of Indemnity with respect to Indemnity's policies issued to persons in this state and was entitled to the premium to be paid after December 31, 1960. And in order to carry on that business during the ensuing six months, complainant became liable for the tax measured by a percentage of the premiums collected by Indemnity during the last six months of the year 1960."

In the case at bar, the fact that the agreement between Niagara and Eagle did not effect a merger is not, in our opinion, determinative of the issue of Niagara's liability for the additional license tax. It is the substance, not the form, of the intercorporate transaction that determines its tax consequences. *Beard v. South Carolina Tax Commission*, 230 S. C. 357, 95 S. E. (2d) 628. The practical result of the transaction here involved was that in 1963 Niagara was to collect the premiums of Eagle's

Columbia business as well as its own. To exclude the former from the calculation of Niagara's license fee would violate the spirit and thwart the purpose of the ordinance.

Reversed.

Moss, C. J., Lewis and Bussey, JJ., and George T. Gregory, Jr., Acting Associate Justice, concur.