### SCHOOL COMMITTEE OF the TOWN OF EASTON

v.

### The EASTON TEACHERS ASSOCIATION.

Supreme Judicial Court of Maine.

March 16, 1979.

Snyder & Jumper by Ervin D. Snyder (orally), Wiscasset, for plaintiff.

Sunenblick, Fontaine & Reben by Stephen P. Sunenblick (orally), Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

PER CURIAM.

The Easton Teachers Association (Association), an employee organization of the Professional Staff Members of the School Department of the Town of Easton, Maine, seeks this Court's review, by appeal, of an interlocutory order of the Superior Court staying the award of an arbitration panel. The panel was selected and named, and was acting, under Section 965(4) of the "Municipal Public Employees Labor Relations Law", 26 M.R.S.A. Chapter 9–A, and its award, rendered in manner to be a "binding

determination" under Section 965(4), required the inclusion of particular provisions in a collective bargaining agreement being negotiated by the Association and the Easton School Committee (School Committee). The order of stay was issued after the School Committee had instituted a Rule 80B M.R.Civ.P. proceeding in the Superior Court for that Court's review of the award, in accordance with 26 M.R.S.A. §§ 965(4) and 972.[1]

■ Treating the order of stay as issued in a "labor dispute" and as in the nature of a preliminary injunction, the Association maintains that the provisions of 26 M.R.S.A. §§ 5 and 6 apply to this case. Section 5, which first appeared in the statutes of Maine in 1933 (P.L.1933, c. 261, § 1), imposes restrictions on the issuance of injunctions, "temporary or permanent", in "any case involving or growing out of a labor dispute." Section 6, first enacted in 1959 (P.L.1959, c. 378, § 72), authorizes an

> "appeal to the law court from an interlocutory order granting or denying a preliminary injunction in a case involving or growing out of a labor dispute . . ."

It also prescribes an accelerated procedure for the hearing of the appeal and mandates "the greatest possible expedition . . ." by the Law Court in deciding it, including assigning "precedence" to it "over all other matters, except older matters of the same character."

The Association filed a timely notice of appeal from the Superior Court's order of stay. Then, having complied with Rule 74A(g) M.R.Civ.P. to give this Court jurisdiction to make an "intermediate order" as an incident of the appeal, the Association moved this Court to vacate the order of stay on the ground that in issuing it, the Superior Court failed to comply with the procedural strictures imposed by 26 M.R.S.A. § 5. Opposing the Association's motion, the School Committee contends that Sections 5 and 6 do not apply to this case and asks dismissal of the appeal as taken from an interlocutory order, as well as dismissal of the Association's "motion to vacate" filed as an incident of the appeal.

We agree with the School Committee's position. We decide that 26 M.R.S.A. §§ 5 and 6 do not apply to Rule 80B proceedings initiated pursuant to 26 M.R.S.A. § 972 to have the Superior Court review the purportedly binding award of an arbitration panel, acting under 26 M.R.S.A. § 965(4) in a so-called "interests" arbitration, which requires that particular provisions be included in a collective bargaining agreement being negotiated between "public employees" and their "public employer", as defined, respectively, in 26 M.R.S.A. §§ 962(6) and (7).[2] We therefore dismiss the Association's purported appeal from the Superior Court's interlocutory order staying the instant arbitration award as well as the Association's motion asking us to vacate that order.

In *City of Biddeford v. Biddeford Teachers Association*, Me., 304 A.2d 387 (1973) this Court recognized that, traditionally, labor relations in the "public" sector, so-called, have been sharply differentiated from labor relations in the "private" sector. *Id.* at 393, 403. We note, too, as a further emphasis of this distinction and as having special significance here, that the federal "Norris-LaGuardia Act", 47 Stat. 70, 29 U.S.C.A. §§ 101 et seq., enacted in 1932, which is the source of 26 M.R.S.A. § 5 enacted one year later in 1933, was held by the Supreme Court of the United States to be inapplicable to labor relations, or labor disputes, between the United States Government, as an employer, and its employees. Moreover, the analysis contained in the various opinions of a majority of the

---

1. Section 965(4) includes the provision that a binding determination of the arbitration panel will be subject to review by the Superior Court in the manner specified by Section 972.

 Section 972 delineates the "manner" of review by requiring that it be "in accordance with the Rules of Civil Procedure, Rule 80B."

2. For further explanation of "interests" arbitration, see *City of Biddeford v. Biddeford Teachers Association*, Me., 304 A.2d 387, 394–5 (1973); *Maine School Administrative District # 5 v. M.S.A.D. # 5 Teachers Association*, Me., 324 A.2d 308, 310 (1974).

Justices made plain that the "labor disputes" covered by the Norris-LaGuardia Act are *only* those between "private" employers and their employees. *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The basic reason for this conclusion, stated most explicitly in the opinion of Mr. Justice Black and Mr. Justice Douglas and accepted in principle by other Justices constituting a majority of the Court, was:

> "There was never an intimation in the progress of the Act's passage that a labor dispute within the Act's meaning would arise because of claims against the Government asserted collectively by employees of the Interior, State, Justice, or any other Government department. Congress had never in its history provided a program for fixing wages, hours, and working conditions of its employees by collective bargaining. Working conditions of Government employees had not been the subject of collective bargaining, nor been settled as a result of labor disputes." *Id.* at 328–329, 67 S.Ct. at 713.

By similar reasoning based on legislative history in Maine, we conclude that 26 M.R.S.A. §§ 5 and 6 relate only to "labor disputes" between "private" employers and their employees and do not apply to the particular dispute now before us insofar as it is a dispute between "public employees" and their "public employer", as defined, respectively, in Sections 962(6) and (7), in regard to a binding "interests" arbitration award made pursuant to Section 965(4).

■ In *City of Biddeford v. Biddeford Teachers, supra,* we stressed that

> "[i]n most of the jurisdictions where the issue has been litigated it has been held that municipal officers have no right to bargain collectively in the absence of legislation giving them this authority and that when city officials agree to bargain collectively without such legislation they are abdicating the responsibilities reposed in them by the electorate." *Id.* at 393.

With this foundational point in mind, we view the declaration of public policy contained in the last paragraph of 26 M.R.S.A.

§ 911, first enacted in 1941 (P.L.1941, c. 292), that "workers" shall have

> "full freedom of association, self organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment and other mutual aid or protection, free from interference, restraint or coercion by their employers or other persons . . ."

in the same way the Supreme Court of the United States regarded the comparable policy declared, at an earlier time, by the United States in the Norris-LaGuardia Act. The policy thus pronounced by the State of Maine applies only to "workers" who are the employees of "private" employers; it did not extend to employees in the "public" sector, namely, either the employees of the State of Maine as sovereign or the employees of the various subdivisions of the government of Maine presently comprehended within the definition of "public employer" in Section 962(7).

As to such "public employers" and their "public employees" the Legislature waited until 1965 to declare a public policy that recognized in any respect a right of public employees to join labor organizations of their own choosing and to be represented by such organizations in collective bargaining for terms and conditions of employment. As thus first made in 1965, such declaration was contained in the "Fire Fighters Arbitration Law" P.L.1965, Chapter 396, and was pronounced as a policy applicable only to municipal fire fighters and their municipal employers. In 1969 the "Fire Fighters Arbitration Law" was repealed and replaced by the comprehensive "Municipal Public Employees Labor Relations Law" P.L.1969, Chapter 424, now codified as 26 M.R.S.A. Chapter 9-A, §§ 961–972. This 1969 enactment declared that the public policy previously confined in applicability to municipal fire fighters was, as of 1969, extended to apply to all "public employees" of "public employers" as defined, respectively, in Sections 962(6) and (7). The 1969 enactment also declared expressly that it undertook to provide "a uniform basis" for the implementation of that public policy.

**1224**

In light of this legislative history we conclude that the comprehensive, self-contained provisions of 26 M.R.S.A. §§ 961–972 constitute the statutory charter which governs the labor relations, as well as the "labor disputes" that may grow out of them, between "public employers" and their "public employees" as therein defined. From this, it follows that the provisions of 26 M.R.S.A. §§ 5 and 6 do not apply to such "public" sector labor relations or labor disputes unless, and except as, Sections 5 and 6 are incorporated by express reference in 26 M.R.S.A. §§ 961–972.

One such express reference appears in Section 968(5)(g). It prescribes that Sections 5 and 6 shall apply, with modifications, to "injunctive relief" sought "[i]n any judicial proceeding" therein authorized for the review of the Public Employees Labor Relation Board's exercise of its powers, as conferred by Section 968(5), to prevent any of the acts by "public employer[s], . . . public employee[s] and public employee organization[s]" prohibited by Section 964.

Such express legislative concern to ensure that §§ 5 and 6 shall apply as to *this one* of the several contexts of judicial review authorized in 26 M.R.S.A. Chapter 9–A [3] speaks volumes, first, to confirm that except for such explicit reference, §§ 5 and 6 would not apply to the particular proceeding for judicial review established in Section 968(5) and, second, to reaffirm, by the omission of such explicit reference in the other contexts in which judicial review is authorized, that Sections 5 and 6 do not apply to them.

We therefore decide that Sections 5 and 6 are inapplicable to the instant interlocutory order of the Superior Court, staying an "interests" arbitration award, which was issued under authority conferred by Rule 80B after the jurisdiction of the Superior Court had been invoked, pursuant to Section 972, to review that award. This being

so, the Association wrongly relies on Sections 5 and 6 as enabling, and requiring, this Court to entertain the Association's appeal from the Superior Court's interlocutory order of stay.

The entry is:

Appeal dismissed; motion to vacate the Superior Court's order of stay dismissed; case remanded to the Superior Court for further proceedings.

McKUSICK, C. J., did not sit.

---

**3.** Other contexts for judicial review are provided in Section 968(4) regarding Rule 80B Superior Court "review of representative proceedings", as well as in Section 972 which gives rise to Rule 80B Superior Court review of "interests" arbitration awards and Superior Court review, in accordance with the Uniform Arbitration Act (26 M.R.S.A. §§ 951–960, inclusive), of "grievance" arbitration awards. See *Maine School Administrative District # 5 v. M.S.A.D. # 5 Teachers Association, supra.*