505 S.E.2d 925

**Larry G. BRANCH, II and James P. Phalen, Appellants,**

**v.**

**CITY OF MYRTLE BEACH, South Carolina, Lynwood Womack (in his capacity as Fire Chief of the City of Myrtle Beach), and Charles Molony Condon, ex rel. Attorney General of the State of South Carolina, Respondents.**

No. 2882.

Court of Appeals of South Carolina.

Heard June 4, 1997.

Decided Aug. 31, 1998.

Rehearing Denied Oct. 22, 1998.

K. Douglas Thornton, of Thornton Law Firm, Georgetown; and Erick J. Genser and Kurt T. Rumsfeld, both of Mulholland & Hickey, Washington, DC, for appellants.

Julian H. Gignilliat and M. Richbourg Roberson, both of Gignilliat, Savitz & Bettis; and C. Havird Jones, Jr., Assistant Attorney General, Columbia, for respondents.

STILWELL, Judge:

Larry G. Branch, II and James P. Phalen, firefighters with the City of Myrtle Beach, brought this action for declaratory and injunctive relief against the City and Fire Chief Lynwood Womack. Branch and Phalen claimed that a policy preventing supervisory firefighters from joining a labor organization whose membership includes lower-ranking employees violated South Carolina's right-to-work statute, S.C.Code Ann. §§ 41–

7–10 to –90 (1986). The trial court disagreed and granted the City's motion for summary judgment. We reverse and remand.

Branch and Phalen are employed as lieutenants of the City's fire department and are considered supervisory firefighters. They were members of the International Association of Fire Fighters, Local 2345, an organization which seeks to promote the interests of firefighters. They ended their membership after Womack issued the following memorandum:

1. Non-supervisory firefighters have the right to join and form any organization they wish.

2. Supervisory firefighters (those holding the rank of Lieutenant and above) may join, affiliate with[,] support, or form any organization they wish *except* a labor organization or union which seeks to represent the interests of non-supervisory firefighters of the City of Myrtle Beach. Such membership or affiliation or support would be a conflict of interest on the part of the supervisory firefighter.

The trial court held that the right-to-work statute did not apply to public sector employees. The court determined that, despite the use of the phrase "any employer," the legislative intent at the time the statute was enacted leads to the inescapable conclusion that it intended to exclude the state and its political subdivisions.

## I.

■ South Carolina is one of twenty-one states that has enacted broad right-to-work guarantees by legislation or by constitutional mandate or both.[1] The South Carolina legisla-

---

1. *See* Ala.Code § 25–7–33 (1992); Ariz. Const. art. XXV (1982); Ariz. Rev.Stat.Ann. § 23–1302 (1995); Ark. Const. art. 34, § 1 (1944); Ark. Code Ann. § 11–3–303 (1996); Fla. Const. art. 1 (1991), § 6; Ga.Code Ann. § 34–6–21 (1998); Idaho Code § 44–2001 (1997); Iowa Code § 731.1 to 731.2 (1993); Kan. Const. art. 15, § 12 (1988); La.Rev.Stat. Ann. § 23:981 (1985); Miss. Const. art. 7, § 198–A (1960); Miss.Code Ann. § 71–1–47(b), (c) (1995); Neb. Const. art. XV, § 13 (1946); Neb. Rev.Stat. § 48–217 (1995); Nev.Rev.Stat. § 613.250 (1996); N.C.Gen. Stat. § 95–78 to –81 (1997); N.D.Cent.Code § 34–1–14 (1987); S.C.Code Ann. § 41–7–30 (1986); S.D. Const. art. VI, § 2 (1946); S.D. Codified Laws Ann. § 60–8–3 (1993); Tenn.Code Ann. § 50–1–201

ture has declared it to be the public policy of this state "that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization." S.C.Code Ann. § 41–7–10 (1986). The specific section of the right-to-work statute at issue here provides in pertinent part:

It shall be unlawful for *any employer:*

(1) To require *any employee,* as a condition of employment, or of continuance of employment, to be or become or remain a member or affiliate of any labor organization or agency;

(2) To require any employee, as a condition of employment, or of continuance of employment, to abstain or refrain from membership in any labor organization[.]

S.C.Code Ann. § 41–7–30 (1986) (emphasis added).

Branch and Phalen contend that the plain meaning of the words "any employer" and "any employee" requires that the statute be applied to the public sector. We agree.

 South Carolina courts generally have been reluctant to construe a statute where its terms are clear and unambiguous. "If a statute is clear and explicit in its language, then there is no need to resort to statutory interpretation or legislative intent to determine its meaning." *Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 401, 175 S.E.2d 805, 817 (1970).

The South Carolina statute states that it applies to "any employer." It does not, however, define "employer" and does not specifically state whether it applies to the state and its political subdivisions.[2] In fact, we have located only one state, Georgia, where the right-to-work law unequivocally provides that it does not apply to the state or its political subdivisions.

(1991); Tex.Code Ann. § 101–052 (1996); Utah Code Ann. § 34–34–2 (1997); Va.Code Ann. § 40.1–58 to –58.1 (1994); Wyo.Stat. § 27–7–110 (1997).

**2.** In the majority of states the right-to-work laws do not address the issue of whether the laws apply to the state. These states include Alabama, Arkansas, Iowa, Louisiana, Mississippi, Nebraska, North Carolina, North Dakota, South Carolina, South Dakota, Tennessee, Texas and Wyoming.

*See* Ga.Code Ann. § 34-6-20(2) (1998) (defining "employer" as "any person ... but shall not include the United States, a state or any political subdivision ..."); *cf.* Fla. Const. art. 1, § 6 (stating a person's right to work shall not be denied because of membership or nonmembership in a labor organization); Fla.Stat.Ann. § 447.201 (1997) (declaring constitutional provision applicable to public employees); Fla.Stat.Ann. § 447.17 (1997) (providing that civil remedy available to any person who may be denied employment because of membership or nonmembership in any labor union is not available to public employees). Other state right-to-work laws apply to the public sector. *See* Ariz.Rev.Stat. § 23-1302; Idaho Code § 44-2011; Kan. Const. art. 15, § 12; Nev.Rev.Stat. § 613.250; Utah Code Ann. § 34-34-2; Va.Code Ann. § 40.1-58.1.

Branch and Phalen also argue that if the Legislature intended to rely upon common-law sovereign immunity to exempt the state from the statute's provisions, it would have acted to make sure the state was excluded after sovereign immunity was abolished.

South Carolina's right-to-work statute was enacted in 1954 after the 1947 Taft–Hartley amendments to the National Labor Relations Act (NLRA) expressly granted states the power to legislate in the labor relations arena. *See* Act. No. 652, 1954 S.C. Acts 1692; *see also* 29 U.S.C § 164(b) (1994). The NLRA specifically excludes the state or its political subdivisions from its definition of employer. 29 U.S.C. § 152(2) (1994). In 1954, South Carolina enjoyed sovereign immunity and could not be subject to suit unless expressly allowed by statute. *See Tucker v. Kershaw County Sch. Dist.,* 276 S.C. 401, 279 S.E.2d 378 (1981); *Brooks v. One Motor Bus,* 190 S.C. 379, 3 S.E.2d 42 (1939). The doctrine of sovereign immunity was abolished, in large measure, in 1985. *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).

In determining that the right-to-work statute did not apply to the City, the trial court relied in part upon a 1964 Attorney General opinion that determined the right-to-work statute did not apply to public school teachers. *See* 1964 Op. S.C. Att'y Gen. 298. While an attorney general opinion may be persuasive, it is not binding precedent. *See Anders v.*

*South Carolina Parole & Community Corrections Bd.,* 279 S.C. 206, 305 S.E.2d 229 (1983).

Once sovereign immunity was abolished in 1985, the General Assembly could have amended the right-to-work statute to exclude the state if it had so desired. In our view, it is more reasonable to assume the legislature would have done so at that time than to assume its failure to act was due to its reliance on an attorney general's opinion published twenty-one years prior to sovereign immunity's abolition. Indeed, it seems the General Assembly would have had serious reservations concerning the viability of that opinion in light of the abolition of sovereign immunity. *See Berkebile v. Outen,* 311 S.C. 50, 53, 426 S.E.2d 760, 762 (1993) ("A basic presumption exists that the legislature has knowledge of previous legislation when later statutes are passed on a related subject.").

■ Giving the words of the statute their plain meaning would be consistent with the overall intent behind South Carolina's right-to-work statute, particularly in view of the abolition of sovereign immunity. There would be no absurd result if public employers were expected to follow the same rules as private employers. Therefore, absent an absurd result flowing from the statute's plain language, we must follow the plain meaning of the statute. *See City of Columbia v. Niagara Fire Ins. Co.,* 249 S.C. 388, 154 S.E.2d 674 (1967) (holding a strict construction of the licensing ordinance under consideration would have yielded a result completely inconsistent with the true intent and meaning of the ordinance).

## II.

The City contends this case should be affirmed even if we find the right-to-work statute applicable to public employment because the policy only prohibits *supervisory* firefighters from belonging to the same union as their subordinates and that this does not violate the policy.

The trial court's order stated:

Because I today hold the right-to-work statute inapplicable to the State of South Carolina and its political subdivisions, this decision does not reach the questions of the Act's

applicability to supervisors in the public sector, nor the supervisory status of the plaintiffs in this action.

Inasmuch as we reverse the court's ruling and find that the right-to-work statute applies to the public sector, we must remand to the trial court for a determination regarding the remaining issues not ruled on, specifically whether the City's policy of preventing supervisory employees from being members of the same labor organization or union as non-supervisory employees is a permissible public policy within the context of the right-to-work law.

**REVERSED AND REMANDED.**

HEARN, J., concurs.

CURETON, J., concurs in separate opinion.

CURETON, Judge (Concurring):

I agree with the majority that South Carolina's Right to Work Act (Act), S.C.Code Ann. §§ 41–7–10 to –90 (1986), applies to the City of Myrtle Beach.

In general, statutes governing labor relations between employers and employees are construed to apply only to private industry and not to public employment. *School Committee of the Town of Easton v. Easton Teachers Association,* 398 A.2d 1220 (Maine 1979); *Retail Clerks Local 187 AFL–CIO v. University of Wyoming,* 531 P.2d 884 (Wyo.1975); 51 C.J.S. *Labor Relations,* § 33 (1967). Public employees have neither the right to strike nor the right to collectively bargain unless such rights are specifically provided by statutory law. *State Board of Regents v. United Packing House Food and Allied Workers, Local No. 1258,* 175 N.W.2d 110 (Iowa 1970); *Retail Clerks Local 187,* 531 P.2d 884; *see also Bateman v. South Carolina State Ports Authority,* 298 F.Supp. 999 (D.S.C.1969). South Carolina has no statute authorizing public employees to bargain collectively or to strike. *See* 1989 Op. S.C. Att'y Gen. No. 121; *see also* Dennis R. Nolan, *Public Employee Unionism in the Southeast: The Legal Parameters,* 29 S.C. L.Rev. 235, 287 (1978).

The cases make a distinction between the right of public employees to collectively bargain and strike on the one hand, and their right to organize for their mutual interest on the

other hand. *State Board of Regents,* 175 N.W.2d 110. This distinction is amply made in *N.J. Turnpike Auth. v. American Federation of State Employees,* 83 N.J.Super. 389, 200 A.2d 134, 138 (N.J.Super.Ct. Ch. Div., 1964), wherein the court, with approval quoted from an opinion of the New Jersey Attorney General:

> The concept of collective bargaining, as generally understood and applied in the field of private industry, implies bargaining sanctions and weapons not admissible to public employees, such as the right to strike and other incidents of the private employment relationship not appropriate in the public employment field. It also implies two bargaining entities of co-equal status, each with unlimited power to enter into binding commitments. This does not apply in the case of the state in relation to its employees.

> Although the Turnpike is not obliged to engage in collective bargaining, it is under an affirmative duty to meet with its employees or their chosen representatives and consider in good faith the grievances and proposals. However, any decision reached must be the result of the independent judgment of Turnpike, taking into consideration, *inter alia,* the grievances and proposals of its employees.

South Carolina's Right to Work Act has as its basic purpose the preservation of the state's employees' right to exercise freedom in choosing employment without regard to union membership. 14 S.C.Juris. *Labor Relations,* § 16 (1992). Encompassed within that right is the right of a public employee to belong[1] to a labor organization. *See* 29 S.C.L.Rev. 235, 239. This right stems from the first amendment's protection of the freedom of association, made applicable to the states by the fourteenth amendment. *Id.* I see no compelling reason why the Act, which as to the provision in issue, codifies this right of association, should not apply to public employees.

The city argues it is obvious the legislature did not intend the Act to apply to the state and its political subdivisions at the time of its adoption in 1954 because the Act includes provisions inconsistent with the public policy and law of this

---

1. I do not suggest in any way that a municipality may not legally prohibit its supervisory employees from joining the same labor organization as its non supervisory employees.

state in 1954. Included among these provisions are provisions for actual damages, punitive damages and criminal sanctions enforceable against the culpable employer. It is true that punitive damages are not recoverable against a state or its political subdivisions. *Macmurphy v. S.C. Dep't of Highways & Pub. Transp.*, 295 S.C. 49, 367 S.E.2d 150 (1988). It is also true that criminal sanctions are inapplicable to municipalities. Nevertheless, the Act does contain remedies, such as injunctive relief, restraining orders and actual damages awards which may be appropriate against the state and its political subdivisions.

The Right to Work Act contains a savings clause which validates the remainder of the Act should certain provisions be found invalid. I would therefore respond to the city's argument regarding the inconsistent provisions of the Act, such as the provision for criminal sanctions and punitive damages, by noting that if these provisions are unenforceable against a municipality, then they may simply be disregarded as unenforceable. In any event, they should not provide a complete shield to the applicability of the Act to public employers.