532 S.E.2d 289

Larry G. BRANCH, II and James P. Phalen, Respondents,

v.

CITY OF MYRTLE BEACH, South Carolina, Lynwood Womack (in his capacity as Fire Chief of the City of Myrtle Beach) and Charles Molony Condon, ex rel, Attorney General of the State of South Carolina, Petitioners.

No. 25131.

Supreme Court of South Carolina.

Heard March 9, 2000.
Decided May 15, 2000.

Julian H. Gignilliat, Stephen T. Savitz, and M. Richbourg Roberson, all of Gignilliat, Savitz & Bettis, of Columbia; Senior Assistant Attorney General C. Havird Jones, Jr., of Columbia, for petitioners.

Howell V. Bellamy, Jr. and Douglas Zayicek, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach; Erick J. Genser and Kurt T. Rumsfeld, of Mulholland & Hickey, of Washington, D. C., for respondents.

Roy D. Bates, of Columbia, for Amicus Municipal Association of South Carolina.

John G. Creech, D. Christopher Lauderdale and D. Randle Moody, II, all of Haynsworth Baldwin Johnson & Greaves, LLC, of Greenville, for Amicus South Carolina Chamber of Commerce.

Armand Derfner and D. Peters Wilborn, Jr., of Charleston, for Amicus AFL–CIO.

TOAL, Justice:

This case is an appeal from a Court of Appeals' opinion finding that South Carolina's right-to-work statute applies to public employment. We disagree and reverse.

### FACTUAL/PROCEDURAL BACKGROUND

Respondents Larry Branch and James Phalen (collectively "the Firemen") are firefighters employed as lieutenants by the City of Myrtle Beach ("the City"). Both Firemen joined Local 2345, a labor union and local affiliate of the International Association of Firefighters. In August of 1993, petitioner Womack, acting in his official capacity as the City's Fire Chief, issued a written policy stating in part:

1. Non-supervisory firefighters have the right to join and form any organization they wish.

2. Supervisory firefighters (those holding the rank of Lieutenant and above) may join, affiliate with, support, or form any organization they wish *except* a labor organization or union which seeks to represent the interests of non-supervisory firefighters of the City of Myrtle Beach. Such membership or affiliation or support would be a conflict of interest on the part of the supervisory firefighter.

(emphasis in original). In response to the policy, the Firemen terminated their union membership and instituted this lawsuit.

The Firemen base their claim on S.C.Code Ann. §§ 41–7–10 through –90 (1976)(the "right-to-work" statute). Section 41–7–30 of the right-to-work statute states:

It shall be unlawful for *any employer*:

(1) To require *any employee*, as a condition of employment, or of continuance of employment, to be or become or remain a member or affiliate of any labor organization or agency;

(2) To require *any employee*, as a condition of employment, or of continuance of employment, to abstain or refrain from membership in any labor organization; . . .

(emphasis added). The Firemen claimed the City's policy violated the statute because the City qualified as an employer under the statute and they qualified as employees. The

Firemen also argued that the statute applied whether or not they were supervisory employees. Additionally, the Firemen argued they were not in fact supervisory employees of the City.

The City responded by arguing the right-to-work statute does not apply to public employment. The trial court agreed and ruled that the City's policy was proper because the right-to-work statute does not apply to the state or its political subdivisions. The Firemen appealed and the Court of Appeals reversed the decision of the trial court and remanded the case. *See Branch v. City of Myrtle Beach,* 332 S.C. 575, 505 S.E.2d 925 (Ct.App.1998). The City appealed and this Court granted certiorari on the following issue:

> Did the Court of Appeals err in ruling that South Carolina's right-to-work statute is applicable to governmental employers such as the City of Myrtle Beach and its Fire Department?

## LAW/ANALYSIS

The City argues the Court of Appeals erred by adopting a "plain meaning" definition of the phrase "any employer" that includes public employment. We agree.

At the time the legislature enacted the right-to-work statute, labor relations statutes did not apply to public employment unless coverage was specifically required by the statute's language. *See* 51 C.J.S. *Labor Relations* § 33 (1967)("Labor relations statutes in general apply to private industry only and not to public employment unless the legislature shows a definite intent to include political subdivisions.").[1] Modern authorities have moved away from this policy of excluding

---

1. *See also* Norman J. Singer, *Sutherland Statutory Construction* § 62.01, at 205 (5th ed. 1992)("Statutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances."); *see generally Retail Clerks Local 187 AFL–CIO v. University of Wyoming,* 531 P.2d 884 (Wyo. 1975)("It has been held generally that statutes governing labor relations between employers and employees are construed only to apply to private industry.").

public employment because they disfavor supporting governmental immunity against an individual who would have been able to recover against a private entity in a similar situation. *See* Norman J. Singer, *Sutherland Statutory Construction* § 62.03 at 223 (5th ed.1992). However, at the time of the right-to-work statute's enactment, a review of other state labor statutes reveals the South Carolina legislature followed the traditional approach.

For other employment statutes, the legislature adopted definitions of "employer" that specifically include coverage of public employment. *See* S.C.Code Ann. § 41–10–10 (Supp. 1999) (Payment of Wages statute); S.C.Code Ann. § 41–13–5 (1976) (Child Labor statute); S.C.Code Ann. §§ 41–27–210 & – 220 (1976) (Employment Security statute); S.C.Code Ann. § 42–1–140 (1976)(Workers' Compensation statute). The inclusion of such definitions covering public employment is consistent with the traditional rule of excluding public employment from coverage unless the statute reveals an intent to do otherwise. These statutes also contain phrases limiting the definitions to their respective chapters and articles.

The Court of Appeals' opinion did not address this traditional rule of statutory construction and instead relied on a "plain meaning" analysis of the term "any employer" to find the statute applied to public employers because the statute did not specifically exclude public employment.[2] Initially, we disagree with the Court of Appeals' finding that a plain meaning definition of the term "any employer" results in coverage of public employment. By ignoring the traditional rule of construction, the Court of Appeals flipped the presumption from one of *exclusion* of public employment to one of *inclusion* of public employment. In light of the legislature's adherence to the traditional approach in other labor relations statutes, this presumption shifting was in error.

 The cardinal rule of statutory construction is for the Court to ascertain and effectuate the intent of the legislature. *Lester v. South Carolina Workers' Compensation Comm'n,* 334 S.C. 557, 514 S.E.2d 751 (1999). When faced with an

---

2. Judge Cureton's concurrence mentions the traditional rule of construction, but chooses not to follow it because he saw no policy reason to exclude public employment from coverage in this case.

undefined statutory term, the Court must interpret the term in accord with its usual and customary meaning. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998). Courts should consider not merely the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997). If the Court of Appeals had adopted the customary meaning of "any employer" with regards to labor relations statutes, a "plain meaning" interpretation would result in the exclusion of public employers from the statute.

In the current case, even if the plain meaning of "any employer" did not exclude public employment, then at best the term would be unclear in light of the rule of statutory construction excluding public employment from coverage by labor relations statutes. Since the meaning of "any employer" would then be ambiguous, the Court could look beyond that specific section in determining legislative intent. A comparison between the right-to-work section and other statutory sections covering labor relations reveals the other statutes specifically include definitions covering public employment while the right-to-work statute does not. In light of the traditional construction of labor relations statutes, we believe that by not having a definition including public employment, the legislature's intent was not to cover public employees.

The Court of Appeals also relies heavily on the abolition of sovereign immunity as a basis for holding the right-to-work statute applicable to political subdivisions. The majority opinion states: "Once sovereign immunity was abolished in 1985, the General Assembly could have amended the right-to-work statute to exclude the state if it had so desired." *Branch v. City of Myrtle Beach,* 332 S.C. 575, 580, 505 S.E.2d 925, 927 (Ct.App.1998). Initially, the Court of Appeals misapprehended the significance of the legislature's choice in 1954 to not waive tort immunity for the state under the right-to-work statute. Since the right-to-work statute did not expressly waive the state's tort immunity, before the abolition of sovereign immunity in 1985, it would have been impossible to sue the government under the right-to-work statute. Instead of analyzing the legislative intent behind the statute, the Court of

Appeals adopted an approach where simply because the state no longer has sovereign immunity against a right-to-work suit, the definition of employer under that statute somehow changed to include public employers. Such an approach completely ignores all of the other policy reasons behind excluding public employment from the right-to-work statute and directly conflicts with the analysis of the legislative intent.

The abolition of sovereign immunity by this Court in *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985), does not supply any indication of the legislative intent in 1954 about whether to include public employment under the right-to-work statute. The Court of Appeals observed that the legislature could have gone back to restore the state's immunity under the right-to-work statute. This action would be unnecessary if, as apparent from the statutory construction of the legislative intent, the statute as a whole does not cover public employment. There would be no need for the legislature to reestablish immunity for the state under a statute that does not apply to it.

██ Furthermore, other reasons beyond just sovereign immunity existed in 1954, as well as exist today, supporting the exclusion of public employment from the right-to-work statute. Unlike private employees, public employees in South Carolina do not have the right to collective bargaining. *See* McNair Resolution, H. 1636, 1969 S.C. Sen. Jour. 826 (April 5, 1969); 1969 House Jour. 942 (April 30, 1969); *see also* Dennis R. Nolan, *Public Employee Unionism in the Southeast: The Legal Parameters*, 29 S.C. L.Rev. 235, 287 (1978). As a result, even if the right-to-work statute applied to public employment, significant aspects of the statute would be totally irrelevant.

For example, under S.C.Code Ann. § 41–7–40 (1976) "any employer" is entitled to deduct union membership dues from employee wages. Public employers are specifically forbidden from this practice by S.C.Code Ann. §§ 8–11–83 & –92 (1976). Likewise, S.C.Code Ann. § 41–7–80 (1976) allows the imposition of a criminal penalty against "any employer" who violates a provision of the chapter. Such criminal penalties are inapplicable to public employers. Under S.C.Code Ann. § 41–7–90 (1976) "any person" may seek punitive damages for a violation

of the statute, but public employers cannot by law be liable for punitive damages. It is important to recognize that despite their inapplicability to public employment, each of these statutory sections use the term "any employer" and "any person" just as the statutory section in dispute.

■ In light of these sections, the Court of Appeals' interpretation of the right-to-work statute covering public employment creates conflicts between several statutory provisions. "If the provisions of the two statutes can be construed so that both can stand, this Court will so construe them." *In the Interest of Shaw*, 274 S.C. 534, 539, 265 S.E.2d 522, 524 (1980). Interpreting the right-to-work statute as excluding public employment creates no conflict with other statutory provisions. Judge Cureton's concurrence recognizes the conflict their opinion creates, but finds that the courts can just overlook the conflicting portions of the right-to-work statutes. We believe the better construction is to retain an interpretation that creates no conflict with any other statutory provisions by finding the right-to-work statute does not apply to public employment.

The general inapplicability of many aspects of the right-to-work statute led to the 1964 Attorney General's Opinion finding the right-to-work act inapplicable to public employment. The Attorney General found:

[I]t was not the intent of the legislature to include public employment within the scope of [the right-to-work statute]. Mere reference to sections of the right-to-work law pertaining to conspiracies, picketing, and damages recoverable against the employers violating such sections, makes it obvious that this law is not applicable to public employment.

1964 S.C. Op. Atty. Gen. 298. Significantly, this Attorney General opinion did not rely on the concept of sovereign immunity. Also, scholarly discussion on this issue supports the position that South Carolina's right-to-work statute does not apply to public employment. *See* Dennis R. Nolan, *Public Employee Unionism in the Southeast: The Legal Parameters*, 29 S.C. L.Rev. 235, 287 (1978)("The law ... is part of the state's right-to-work act, which does not apply to public employees.").

In conclusion, we hold the Court of Appeals erred in finding the right-to-work statute covers public employment. First, the plain meaning of the phrase "any employer" in a labor relations statute excludes public employment. Second, even if the Court looked beyond the plain meaning, a review of other South Carolina labor statutes reveals that when the legislature desired to cover public employment it includes a definition doing so. Third, the failure to waive sovereign immunity in 1954 demands an interpretation that the statute excluded public employment at that time. The abolition of sovereign immunity by this Court in 1985 reveals nothing about the legislative intent behind a statute passed in 1954 and whether that statute applied to public employment. Fourth, the Court of Appeals' decision creates conflict between statutory sections while a holding that the statute does not cover public employment creates no conflict. Finally, since it has generally been recognized that the right-to-work statute does not apply to public employment, the decision to dramatically change the status quo should be made by the legislature and not judicially by the Court.

## CONCLUSION

Based on the foregoing, we **REVERSE** the Court of Appeals' decision including public employment under the right-to-work statute.

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.